**UNITED COPPER INDUSTRIES, INC. and Texas Natural Resource Conservation Commission, Appellants,**

v.

**Joe GRISSOM, Appellee.**

**No. 03–99–00117–CV.**

Court of Appeals of Texas, Austin.

May 18, 2000.

Rehearing Overruled June 15, 2000.

Brian E. Berwick, Cynthia Woelk, Asst. Atty. Gen., Natural Resources Division, Austin, Richard W. Lowerre, Henry, Lowerre, Johnson, Hess & Frederick, Austin, for Appellants.

Keith A. Courtney, Jenkens & Gilchrist, Austin, for appellee.

Before Justices JONES, KIDD and PATTERSON.

## ON MOTION FOR REHEARING

MACK KIDD, Justice.

We withdraw our original opinion and judgment issued February 3, 2000, and substitute this one in its place.

This is a suit for judicial review of a Texas Natural Resource Conservation Commission (the "TNRCC" or "Commission") order granting an air quality permit application submitted by United Copper Industries, Inc. ("United Copper") and denying Joe Grissom's request for a preliminary adjudicative hearing on whether Grissom should be entitled to a contested-case hearing on his challenge to the issuance of the permit in question. Upon judicial review of the decision, the district court reversed the Commission's order and remanded the cause to the Commission for a preliminary adjudicative hearing to provide Grissom an opportunity to present competent evidence in support of his request. United Copper and the Commission appeal the district court's judgment, citing three independent grounds for reversal. We will affirm.

## BACKGROUND

In 1997, United Copper applied to the Commission for a permit to construct and operate two copper melting furnaces in Denton, Texas. See Tex. Health & Safety Code Ann. § 382.0518 (West Supp.2000). United Copper intended to use these facilities to produce commercial grade copper rod that would be used to manufacture electrical wire and cable. In its applica-

tion, United Copper identified the types of emissions the furnaces would release into the environment—primarily copper and lead particulate matter—and attached the results of an "air dispersion computer model" indicating the maximum ground-level concentrations of the contaminants that it predicted would result from its operations. After considering the application and the attached research data, the TNRCC determined that the proposed facilities would not have any negative impact on the health or property interests of the public in the surrounding area—a finding that is necessary before the TNRCC may issue an air quality permit. *See id.* § 382.0518(b); 30 Tex. Admin. Code § 116.111(2)(A)(i) (1999). United Copper then alerted the public of its permit application by publishing a notice in a local newspaper and posting signs around the proposed construction site as required by statute. *See* Tex. Health & Safety Code Ann. § 382.056 (West Supp.2000).

Shortly thereafter, Grissom, who lives within two miles of the proposed facilities, sent a letter to the TNRCC requesting a hearing on United Copper's permit application.[1] In his written hearing request, Grissom expressed his concern about the negative effects he anticipated the facilities would have on his health and the health of his two sons, all of whom suffer from serious asthmatic conditions. In response to Grissom's letter, United Copper and the Commission's executive director filed written replies urging the Commission to deny Grissom's request for a hearing. *See* 30 Tex. Admin. Code § 55.26(e) (1999) (permitting TNRCC executive director, Office of Public Interest Council, and permit applicant to submit written responses to hearing requests). In its response, United Copper maintained that Grissom's request should be denied because: (1) Grissom did not have standing as an "affected person" to request a contested-case hearing, (2) the

hearing request was "unreasonable," and (3) Grissom failed to present any competent evidence in support of his request. The Commission's executive director, on the other hand, contended in his response that *although Grissom was an affected person* based on the factors set forth in the *agency's rules,* Grissom's request should nevertheless be denied *solely* on the ground that it was "unreasonable." He argued that it was unreasonable because the uncontroverted evidence United Copper submitted with its application established that the emissions would *probably not* negatively affect Grissom, his family, or any other members of the public. Grissom did not reply to the responses filed by United Copper and the Commission's executive director, despite notice from the Commission that he was permitted to do so. Nor did Grissom ever submit any evidence in support of his request.

Apart from the hearing request itself, the only item filed in support of Grissom's request was a report issued by the Office of Public Interest Council ("OPIC"), a division of the Commission that represents the public's interest. Citing its concern for procedural fairness, OPIC recommended that the TNRCC grant Grissom's request. OPIC reasoned that if the Commission refused to grant the request, Grissom would be denied due process because he would be denied an opportunity to prove the merits of his case on the basis of evidence that he had not been given a fair opportunity to present or refute.

The Commission gave Grissom and United Copper one month's notice of the public meeting scheduled to evaluate and act on Grissom's hearing request. The notice stated that Grissom was free to attend the meeting and might be called upon to answer any questions the Commission might have; however, the notice provided that this was to be a formal meeting

---

1. Three other concerned residents in the area also filed hearing requests. Although their hearing requests were also denied, these individuals did not seek judicial review of the TNRCC's decision. The issue in this appeal is therefore limited to the denial of Grissom's request.

at which no testimony would be taken. At this meeting and after reviewing Grissom's request and the responses filed by United Copper, OPIC, and the Commission's executive director, the Commission denied Grissom's hearing request after concluding that he had not satisfied the requirements set out in the Commission's rules; it also granted the air quality permit United Copper needed in order to construct and operate its furnaces.

Grissom proceeded to file suit in district court, seeking judicial review of the Commission's decision.[2] Grissom contended that, at the very least, he was entitled to a preliminary hearing where he would have an opportunity to offer competent evidence in support of his request. The TNRCC responded with a general denial, and United Copper intervened to protect its interest in the permit it had been granted. The district court ultimately agreed with Grissom and decided that the Commission erred in determining that the hearing request was unreasonable and not supported by competent evidence without first providing Grissom an opportunity to present his evidence at a preliminary adjudicative hearing. In its final judgment, the district court reversed the TNRCC's order and remanded the cause to the Commission for a preliminary hearing at which Grissom would have the opportunity to present competent evidence in support of his request.

United Copper and the Commission now appeal the district court's judgment, maintaining that the Commission properly denied the hearing request because: (1) Grissom did not have standing as an "affected person" to request a contested-case hearing, (2) the hearing request was "unreasonable," and (3) Grissom failed to present

any competent evidence in support of his request.

## STANDARD OF REVIEW

 Grissom filed his request for a contested-case hearing in accordance with the Texas Clean Air Act. *See* Tex. Health & Safety Code Ann. §§ 382.001–.143 (West 1992 & Supp.2000). Authority to sue the Commission under the Act is found in section 382.032(a), which provides that "[a] person affected by a ruling, order, decision, or other act of the commission or of the executive director ... may appeal the action by filing a petition in a district court of Travis County." Tex. Health & Safety Code Ann. § 382.032(a) (West Supp.2000). When judicial review of a decision is sought, the only issue for the court to decide is "whether the [Commission's] action is invalid, arbitrary, or unreasonable." *Id.* § 382.032(e). This Court has applied this unusual standard of review only once before. *See Smith v. Houston Chem. Servs., Inc.,* 872 S.W.2d 252, 257 n. 2 (Tex. App.—Austin 1994, writ denied). In *Smith,* we indicated that this standard seems to imply the applicability of the scope of review set forth in the Administrative Procedure Act (the "APA"). *See id.;* Tex. Gov't Code Ann. § 2001.174 (West 2000). Because the statutory grounds for reversal in the APA are legal questions subject to *de novo* review by a court of appeals, we will treat as a question of law the issue here of whether the Commission's order was invalid, arbitrary, or unreasonable. *See Texas Dep't of Public Safety v. Doyle,* 987 S.W.2d 897, 899 (Tex.App.—Fort Worth 1998, no pet.); *cf. In re Humphreys,* 880 S.W.2d 402, 404 (Tex.1994).

---

2. Initially, Citizens for Healthy Growth ("Citizens"), a local community action group interested in protecting the local environment and aligned with Grissom, was also a party at the district court level. However, the Commission and United Copper filed pleas to the jurisdiction and successfully argued that Citizens lacked standing to bring suit. The district court granted the pleas to the jurisdiction and dismissed Citizens' claims, leaving only Grissom's cause of action. Citizens chose not to challenge the district court's ruling and is not a party to this appeal.

## DISCUSSION

The issue presented in this appeal is quite narrow. Our review is limited to the confines of the district court's judgment granting Grissom a preliminary hearing to provide him an opportunity to offer competent evidence in support of his request. Contrary to what appellants suggest, the district court did not grant Grissom a contested-case hearing on the merits of his case against United Copper's application; rather, the district court merely ordered the Commission to provide Grissom a preliminary hearing where he would have a *meaningful opportunity* to offer competent evidence in support of his request. It is this narrow decision that we are called upon to review. We do not comment on the ultimate issue of whether the Commission should grant Grissom's request for a contested-case hearing on the merits of his case against United Copper's permit application.

The TNRCC is charged with the duty of administering many of the laws designed to safeguard this state's environment and conserve its natural resources. This includes the crucial task of overseeing the regulatory protection of the State's air quality. *See* Tex. Health & Safety Code Ann. § 382.011 (West Supp.2000). The legislature was undoubtedly mindful of the magnitude of this responsibility when it enacted the Texas Clean Air Act (the "Act"), which begins:

The policy of this state and the purpose of this chapter are to safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants, consistent with the protection of public health, general welfare, and physical property, including the esthetic enjoyment of air resources by the public and the maintenance of adequate visibility.

*Id.* § 382.002. The legislature mandates that the Act be "vigorously enforced." *Id.*

In furtherance of this policy, the Act requires that any person intending to construct, modify, or operate a facility that may emit air contaminants first apply to the TNRCC for an air quality permit which must be granted before that person may construct or operate the facility. *See id.* §§ 382.051, .0518. Once the application is complete, the applicant must provide the public with notice of its application. *See id.* § 382.056. This requirement affords individuals who may be affected by the grant or denial of the permit a *meaningful opportunity* to voice their concerns and participate in the permitting process by requesting a contested-case hearing on the permit application.

Here, United Copper gave the required notice, and Grissom timely responded with a written request for a hearing on the issue of whether the Commission should grant the permit. At the time Grissom submitted his request in 1998, one of the statutes governing the hearing process provided that "the commission or its delegate shall hold a hearing on the permit application or permit renewal application before granting the permit or renewal if a person who may be affected by the emissions . . . requests a hearing within the period set by commission rule." Act of May 4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws 996, 997 (Tex. Health & Safety Code Ann. § 382.056(d), since amended by Act of May 30, 1999, 76th Leg., R.S., ch. 62, § 11.04(c), ch. 1350, § 5(g), 1999 Tex. Gen. Laws 4570, 4574). Thus, to be entitled to a hearing, the individual requesting it must be "a person who may be affected" by the emissions that would result if the permit were granted.

In its first point of error, United Copper argues that Grissom is not a person who would be affected by the proposed facility. An affected person is "one who has a personal justiciable interest related to a legal right, duty, privilege, power, or economic interest affected by the application." 30 Tex. Admin. Code § 55.29(a) (1999). An interest that is common to members of the general public does not qualify as a personal justiciable interest.

*See id.* This standard does not require parties to show that they will ultimately prevail on the merits; it simply requires them to show that they will potentially suffer harm or have a justiciable interest that will be affected. *See Heat Energy Advanced Tech., Inc. v. West Dallas Coalition for Envtl. Justice,* 962 S.W.2d 288, 289 (Tex.App.—Austin 1998, pet. denied) (analyzing identical standard as articulated in section 5.115(a) of Texas Water Code).

In support of its contention, United Copper specifically cites two of the six factors the TNRCC considers in determining whether an individual is an affected person. *See* 30 Tex. Admin. Code § 55.29(c)(1)-(6). The first factor demands consideration of "whether a reasonable relationship exists between the interest claimed and the activity regulated." *Id.* § 55.29(c)(3). The second requires consideration of the "likely impact of the regulated activity on the health, safety, and use of the property of the person." *Id.* § 55.29(c)(4). Although United Copper presumably concedes that the serious health and safety concerns Grissom has raised are reasonably related to the proposed regulated activity, it argues that Grissom is not an affected person because United Copper's unrefuted evidence conclusively establishes that Grissom's health, safety, and property will not be affected. We disagree.

■ Contrary to United Copper's contention, the modeling data[3] provided to the Commission does not prove that Grissom and his family will not be affected. Rather, the data merely suggests that Grissom may not be affected to a *sufficient degree* to entitle him to prevail in a contested-case hearing on the merits of his case against United Copper's application. United Copper confuses the preliminary question of whether an individual has standing as an affected person to *request* a contested-case hearing with the ultimate question of whether that person will *prevail* in a contested-case hearing on the merits. In essence, United Copper suggests that Grissom should be required to prove that he will *prevail* in a contested-case hearing just to show that he has the standing necessary to *request* such a hearing. We reject this argument here just as we did in *Heat Energy. See* 962 S.W.2d at 295.

■ In his hearing request, Grissom raised specific concerns about the possible negative impacts that the copper plant could have on his health and the health of his family. As stated, Grissom lives within two miles down-wind of the proposed facility, and he and his sons suffer from serious asthma. United Copper's own data indicates that the operations will result in increased levels of lead and copper at the site of Grissom's home and the elementary school one of his sons attends. Considering Grissom's unique health concerns and his close proximity to the proposed facility, we conclude that he is more likely than other members of the general public to be adversely affected by the facility. Although the parties dispute the severity of the impact that the emissions will have on Grissom and his family, it is clear that the Grissoms will be affected to some degree. As even the TNRCC's executive director concluded, Grissom and his family have a personal, justiciable interest affected by United Copper's application, and this interest is different than that of the general public.[4] Thus, Grissom is a person who

3. Air dispersion computer modeling is a method commonly used by the TNRCC, the United States Environmental Protection Agency, and companies applying for air quality permits to evaluate the possible impacts of emissions on humans and the environment. Air dispersion computer modeling predicts the maximum ground-level concentrations of air contaminants at various off-site locations, as would result from a facility's operations in the event the requested permit were issued.

4. In his written response to the hearing requests filed by Grissom and three of Grissom's neighbors, the Commission's executive director stated:

All four of the individuals expressed a personal justiciable interest affected by the

may be affected by the permit as contemplated by the statute and the Commission's rules. We overrule appellants' first point of error.

■ Having concluded that Grissom is an affected person, we next turn to the question of whether his request was reasonable and supported by competent evidence. Although affected persons generally are entitled to a hearing upon request, this right is qualified. In certain circumstances, a hearing request shall *not* be granted, even if submitted by "a person who may be affected":

> The Commission *shall not* hold a hearing if the basis of a request by a person who may be affected is determined to be *unreasonable*. Reasons for which a request for a hearing on a permit amendment, modification, or renewal shall be considered to be unreasonable include, but are not limited to, an amendment, modification, or renewal that would not result in an increase in allowable emissions and would not result in the emission of an air contaminant not previously emitted.

Act of May 4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws 996, 997 (Tex. Health & Safety Code Ann. § 382.056(d), since amended) (emphasis added). Prior to its amendment in 1999, section 5.115 of the Texas Water Code went even further in qualifying a requestor's right to a hearing: "The commission is not required to hold a hearing if the commission determines that the basis of a person's request for a hearing as an affected person is not reasonable or is not sup-

ported by competent evidence." [5] Act of May 28, 1995, 74th Leg., R.S., ch. 882, § 1, 1995 Tex. Gen. Laws 4380, 4381 (Tex. Water Code Ann. § 5.115(a), since amended by Act of May 30, 1999, 76th Leg., R.S., ch. 1350, § 1, 1999 Tex. Gen. Laws 4570); *see also* 30 Tex. Admin. Code § 55.27(b)(2) (1999).

■ Citing these two statutory provisions, United Copper and the Commission argue in their final two points of error that the Commission's decision to deny Grissom's request was proper because the hearing request was both unreasonable and not supported by competent evidence. We disagree. After carefully reviewing the facts, we are persuaded that the Commission's decision was unreasonable because it denied Grissom a *meaningful opportunity* to offer evidence in support of his request and a chance to refute the proof offered by United Copper.

· It is undisputed that when Grissom submitted his request, he did not simultaneously offer any evidence in support of his request. Despite this apparent failure to satisfy the burden of offering competent evidence in support of his request, Grissom nevertheless argued—and the district court agreed—that at the very least the Commission should have granted him a preliminary hearing to provide him an *opportunity* to offer such evidence. Appellants counter that Grissom had a sufficient opportunity to offer evidence and that he simply failed to take advantage of this opportunity. They maintain that Grissom's failure to meet his burden of production resulted from his own mistake and, furthermore, that his request was unrea-

application, specifically concerns relating to air pollution and exacerbated respiratory illnesses based upon the individuals' proximity to the proposed facility. These interests are protected by the Texas Clean Air Act, and are not common to members of the general public, as required by 30 [Tex. Admin. Code] § 55.29(a).... Accordingly, all four individuals requesting a hearing appear to meet the criteria for 'affected person' under § 55.29(c).

5. When the former Texas Air Control Board and Texas Water Commission were merged and became the Texas Natural Resources Conservation Commission in 1991, the body of ·statutory law applicable to the TNRCC remained divided between the Texas Water Code and the Texas Health and Safety Code. Here, all the parties agree that former section 5.115 of the Texas Water Code and former section 382.056(d) of the Texas Health and Safety Code both govern Grissom's hearing request.

sonable in light of the evidence United Copper introduced suggesting that the emissions would not significantly affect the Grissoms.

Although appellants' argument appears persuasive on its surface, it ultimately fails because it erroneously presupposes that Grissom had a meaningful opportunity to present the necessary evidence. Furthermore, it disregards the confusing nature of the Commission's notices and the language used in the Commission's own rule governing hearing requests. *See* 30 Tex. Admin Code § 55.21(c), (d). While we remain mindful of the statutory provision requiring Grissom to submit competent evidence in support of his request, we believe that individuals requesting a hearing should be provided, at the very minimum, a fair and meaningful opportunity to present such evidence. The fundamental ideals of fairness implicit in the rationale behind providing public notices and opportunities for hearings demand this much. Basic due process requires that when a decision maker is called upon to make a decision grounded on evidence, the parties involved should be provided fair notice and a meaningful opportunity to present their evidence. Given the facts of this case, we are convinced that because of the lack of clarity of the Commission's notices and its rule governing hearing requests, Grissom was not provided a meaningful opportunity to meet his burden of production.[6]

First, we observe that in the public notice United Copper published following the submission of its application, Grissom was told that to request a hearing he must submit the following:

(1) your name (or for a group or association, an official representative), mailing address, daytime phone number, and fax number, if any; (2) the applicant's name and permit number; (3) the statement "I/we request a public hearing"; (4) *a brief, specific statement of how and why emissions from the proposed facility would adversely affect you in any way not common to members of the general public;* and (5) the location of your property relative to the proposed facility.

(Emphasis added.) This notice makes no reference to any evidentiary requirement. Likewise, in its written response to Grissom's request, the Commission never alluded to any need to offer evidence, although it acknowledged receiving the request and explained how it would be reviewed. Next, in a letter sent to Grissom and the other parties interested in United Copper's permit application, the Commission stated that it would not permit any oral argument or public comment at its formal meeting and indicated that its decision to grant or deny the hearing request would be based on "the hearing request, written responses to the hearing request, any written replies to those responses, and any responses to questions." Again, the Commission never indicated that its decision might depend upon whether Grissom submitted evidence in support of his request.

Finally, TNRCC's own administrative rule governing the submission of hearing requests does not require those requesting hearings to submit evidence with their requests; it merely establishes the deadline by which hearing requests must be received and restates the same requirements set out in the Commission's public notice, including the need to submit a "brief, but specific, written statement" explaining how the requestor will be affected in a manner not common to members of the general public. *See* 30 Tex. Admin. Code

6. Although we note that Grissom was *pro se* at the time he submitted his request, we do not apply a different standard. *See Scoville v. Shaffer,* 9 S.W.3d 201, 204 (Tex.App.—San Antonio 1999, no pet.); *Bailey v. Rogers,* 631 S.W.2d 784, 786 (Tex.App.—Austin 1982, no writ) (both holding *pro se* litigants to same standard as litigants represented by licensed counsel).

§ 55.21(c), (d). Grissom satisfied these requirements. Therefore, based upon the notices in the record and the administrative rules governing this cause, we hold that the Commission acted unreasonably in not granting Grissom a preliminary hearing affording him a meaningful opportunity to present evidence. We overrule appellants' final two points of error.

## CONCLUSION

The Commission's decision to deny Grissom's request without first providing him an opportunity to present evidence in support of his request, as well as a chance to rebut the evidence produced by United Copper, was unreasonable. Our holding, however, is a narrow one and is restricted to the facts of this case. We do not decide the issue of whether the Commission should ultimately grant Grissom a contested-case hearing on the merits or whether United Copper's permit application should be granted; those issues can only be decided after Grissom is provided a preliminary hearing where he will have a meaningful opportunity to offer his own evidence in support of his request, as well as the chance to rebut the evidence already submitted by United Copper. Having overruled all of appellants' points of error, we affirm the district court's judgment.

J. WOODFIN JONES, Justice, dissenting.

I respectfully dissent.

In this case, Grissom's right to a hearing on the permit request is premised on former section 382.056(d) of the Health and Safety Code, which in turn is qualified by the limitations found later in that same section and in former section 5.115(a) of the Water Code. *See* Act of May 4, 1995, 74th Leg., R.S., ch. 149, § 2, 1995 Tex. Gen. Laws 997 (Tex. Health & Safety Code Ann. § 382.056(d), since amended); Act of May 28, 1995, 74th Leg., R.S., ch. 882, § 1, 1995 Tex. Gen. Laws 4381 (Tex. Water Code Ann. § 5.115(a), since amend-

ed). Even assuming that Grissom is "a person who may be affected" by the granting of the permit, I cannot agree that the Commission's determination that Grissom's request was unsupported by competent evidence was invalid, arbitrary, or unreasonable.

In addition to the statutory requirement that a hearing request be reasonable, the pre–1999 Water Code required that persons requesting a contested-case hearing offer competent evidence in support of the request. *See* Act of May 28, 1995, 74th Leg., R.S., ch. 882, § 1, 1995 Tex. Gen. Laws 4381 (Tex. Water Code Ann. § 5.115(a), since amended). As both parties acknowledge, Grissom submitted his request without offering any evidence, much less competent evidence, in support of his request. Despite Grissom's failure to satisfy this statutory requirement, the majority nonetheless concludes that the *only* way he can be given a "meaningful opportunity" to offer competent evidence in support of his request is through a separate contested-case hearing, *i.e.*, a contested-case hearing to determine if he is entitled to a contested-case hearing.

In addition to failing to offer any guidance on what constitutes a reasonable hearing request, the statute is silent as to what form of proceeding, if any, is necessary to make the preliminary determination of whether the statutory prerequisites for a hearing request are met. The Commission addressed this uncertainty by promulgating its own rules to apply in these circumstances. *See* 30 Tex. Admin. Code § 55.27(a) (1999). By its rules, the Commission has provided that to the extent it must decide whether a request for a hearing should be granted, it is *not* required to hold a contested-case hearing: "The determination of the validity of a hearing request is not, in itself, a contested case subject to the APA." 30 Tex. Admin. Code § 55.27 (1999). The Commission is only required to evaluate the hearing request at a scheduled public Commission meeting where it may decide to proceed in

one of four possible ways.[1] Consequently, the preliminary determination of whether a request is supported by competent evidence may be made without ever conducting an adjudicative hearing. Referring the hearing request to the State Office of Administrative Hearings ("SOAH") for a preliminary contested-case hearing solely on the issue of whether the request for a hearing should be granted, as the Commission determined was not appropriate here, is only one available option. *See id.* § 55.27(a)(4). In the event the Commission determines on its own that the hearing request does not meet the statutory requirements, it may deny the request and proceed to act on the application. *See id.* § 55.27(a)(1).

Although, as the majority points out, the TNRCC failed to indicate in its notice that his request needed to be supported by competent evidence, the Water Code as it read in 1995 plainly required that Grissom offer such evidence. Because all persons are charged with knowledge of the law, Grissom was charged with knowledge of this requirement, even in the absence of the Commission advising him of this. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 n. 3 (Tex.1990). Furthermore, contrary to his claim, Grissom had sufficient opportunity to offer his own evidence in support of his request, as well as to respond to the challenges United Copper had lodged against his request. *See* 30 Tex. Admin. Code §§ 55.21, 55.26(f) (1999).

As the person requesting the hearing, Grissom—along with United Copper, OPIC, and the TNRCC director—was free to submit written comments, data, and other information to support his position that the hearing request should be granted. *See* 30 Tex. Admin. Code § 55.26(f). In a letter sent to Grissom and all the other parties interested in United Copper's permit application, the Commission stated that, although it would not permit oral argument or public comment at the meeting on the issue of whether the request should be granted, it might wish to use the public meeting as a forum to ask questions of the person requesting the hearing. The letter also stated that the Commission's decision would be based on "the hearing requests, written responses to the hearing request, *any written replies to those responses, and any response to questions.*" (Emphasis added.) Thus, Grissom could have offered evidence in support of his request or otherwise challenged United Copper's objections to his request at any time up to six days before the Commission meeting. *See id.* Although Grissom's ignorance of the evidentiary requirement at the time he first submitted his request is quite understandable, his failure to offer competent evidence after receiving United Copper's written response to his request is not so easily excused. After all, United Copper's response specifically referred to and discussed at length Grissom's failure to support his request with competent evidence as required by the Water Code.

Furthermore, Grissom was free to attend the public meetings held for the pur-

---

1. Section 55.27 provides that upon evaluating the hearing request at the scheduled hearing, the Commission may:
 (1) determine that a hearing request does not meet the requirements of this subchapter, and act on the application;
 (2) determine that a hearing request does not meet the requirements of this subchapter, and refer the application to a public meeting to develop public comment before acting on the application;
 (3) determine that a hearing request meets the requirements of this subchapter, and direct the chief clerk to refer the application to SOAH [State Office of Administrative Hearings] for a hearing; or
 (4) direct the chief clerk to refer the hearing request to SOAH. The referral may specify that SOAH should prepare a recommendation on the sole question of whether the request meets the requirements of this subchapter.... If the commission refers the hearing request to SOAH it shall be processed as a contested case under the APA.
 30 Tex. Admin. Code § 55.27(a).

pose of receiving public comment on the permit application, as well as the very meeting where the Commission evaluated his request. At the latter meeting, Grissom could have responded to any questions the Commission might have had concerning his request. Despite these opportunities, Grissom chose not to offer any evidence in support of his request or to otherwise respond to the challenges United Copper had made to his request. For this reason, I disagree that Grissom was deprived of a meaningful opportunity to offer evidence in support of his request.

In light of the clear legislative mandate that those requesting administrative hearings before the TNRCC support their requests with competent evidence, and in the absence of any constitutional, statutory, or regulatory provision requiring the Commission to hold a hearing to make this preliminary determination, I cannot agree that the Commission's decision to deny Grissom's request on this basis was invalid, arbitrary, or unreasonable. I would therefore sustain appellant's second issue, reverse the district court's judgment, and render judgment affirming the Commission's order.

of the complaint, and the pleadings are to be liberally construed.