TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00143-CV






Chocolate Bayou Water Company and Sand Supply, A Division of Campbell Concrete

and Materials, L.P., Appellants


v.


Texas Natural Resource Conservation Commission; City of Houston, Texas; Brazos River
Authority; and Texas Water Development Board, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. GN201029, HONORABLE PAUL DAVIS, JUDGE PRESIDING





O P I N I O N




 Appellants, Chocolate Bayou Water Company and Sand Supply appeal a district-court
grant of a plea to the jurisdiction, and in the alternative, summary judgment, dismissing their suit
against appellees, the Texas Natural Resource Conservation Commission, (1) the City of Houston, the
Brazos River Authority, and the Texas Water Development Board ("TWDB") (collectively
"TCEQ"). Appellants' central complaint is that TCEQ issued a defective notice concerning the
amendment application to the reissued Allens Creek water permit that prevented appellants from
timely requesting a contested-case hearing on the amendment application. Appellants contend that
the notice of the application was defective because general language in the notice differed from the
amended permit the Commission actually granted. Appellants have also alleged: (1) Senate Bill
1593, which authorized the Allens Creek permit and its amendment, is unconstitutional as a
"special" or "local" law; (2) Senate Bill 1593 violated appellants' due process rights by authorizing
TCEQ to issue TWDB this permit without notice or hearing; and (3) the amended permit infringes
appellants' senior water rights in violation of the Texas Water Code. TCEQ filed a plea to the
jurisdiction. In addition, both appellants and TCEQ filed motions for summary judgment. The
district court granted TCEQ's plea to the jurisdiction and in the alternative, also granted TCEQ's
summary judgment. We will affirm.


BACKGROUND


 The first Allens Creek permit was issued to Houston Lighting & Power in 1974 for
the purpose of providing a cooling reservoir for a proposed power plant. The power plant was never
built, and the permit was canceled ten years later at the request of Houston Lighting & Power. In
1999, the Texas legislature passed Senate Bill 1593 ("S.B. 1593"), a comprehensive water plan that
contained a provision that specifically required TCEQ, the state agency charged with managing water
permitting, to reissue the Allens Creek permit to TWDB for the purpose of supplying Houston with
municipal water. Because the reissued permit retained all the provisions of the first permit but was
intended for a different purpose, the bill also provided that the reissued permit could be amended and
that the amendment application would have to meet the notice and hearing requirements of the water
code. Further, S.B. 1593 allowed TWDB to transfer the Allens Creek permit to another political
subdivision. TWDB has since shared its permit with the Brazos River Authority and the City of
Houston.

 TWDB filed an application to amend the Allens Creek permit in June 2000. Senior
water-right holders, those that hold permits predating the Allens Creek reissued permit, were mailed
a notice of the application. Both Chocolate Bayou and Sand Supply hold water rights senior to
TWDB's Allens Creek permit; both were duly given notice of the amendment application. The
notice met the sparse statutory requirements of the water code and further indicated that the amended
Allens Creek permit would contain stream flow restrictions measured at the Richmond gage that
would "safeguard downstream water rights." See Tex. Water Code. Ann. § 11.132 (West 2000). 
Stream flow restrictions are one method that TCEQ uses to protect senior water rights. TCEQ may
assign a permitee a stream flow restriction. When the river flows below that specified number, the
permitee can no longer divert water from the river. Thus, a low stream flow restriction allows the
permitee to divert more water than a high restriction. Allens Creek is located upstream from
Chocolate Bayou and Sand Supply on the Brazos River.

 Chocolate Bayou was sent a copy of the application for amendment along with the
notice. Sand Supply stated at oral argument that they did not get a copy of the application until much
later. (2) Because the application is a sparse and highly technical document, TCEQ requested, and
TWDB filed, more detailed supporting materials along with its application. Both the application and
supporting materials were on file and open to review by the public. Once the application for
amendment was filed, the Brazos River Authority, co-holder of the Allens Creek permit, conducted
a series of "road shows" wherein they discussed the amendment they were seeking with senior water-right holders. Appellants contend that during these meetings, the Brazos River Authority described
the Allens Creek permit as a "scalping operation" that would only divert water from the Brazos River
during high-water periods.

 In March 2001, appellants obtained copies of the draft amended permit. At that time
the permit had not yet been formally adopted. The amended permit contained stream flow
restrictions measured at a gage over thirty miles upstream from the Richmond gage, a location much
closer to the actual diversion point of the Allens Creek permit. It also specified stream flow
restrictions that both appellants now claim impair their senior water rights. After receiving its copy
of the draft amended permit, Chocolate Bayou filed a request for an evidentiary hearing with TCEQ. 
In May 2001, Sand Supply requested a formal contested-case hearing regarding the amended permit. 
However, neither appellant could request a contested-case hearing at that time because the timetable
for contested-case filings had elapsed. (3) Both appellants filed several requests for rehearing over the
following months. Each request was denied by the Commission. On January 16, 2002, TCEQ
formally granted the amended Allens Creek permit. 

 Appellants filed suit for judicial review in district court. Appellants' main complaint
is that the notice of amendment TCEQ issued to senior water-right holders was defective because
it differed materially from the amended permit that TCEQ ultimately granted, and appellants'
reliance on the defective notice prevented them from filing for a contested-case proceeding regarding
the Allens Creek permit amendment thereby depriving them of due process. In their district court
lawsuit, appellants complained for the first time that the original permit issued pursuant to S.B. 1593
was unconstitutional because S.B. 1593 is an impermissible "local law" and because the legislature
required TCEQ to issue the Allens Creek permit without notice or hearing. Appellants also claimed
that TCEQ had acted unlawfully by issuing the amended Allens Creek permit in the face of
appellants' protests. The district court dismissed appellants' claims pursuant to TCEQ's plea to the
jurisdiction and in the alternative granted TCEQ summary judgment.


STANDARD OF REVIEW


 Subject-matter jurisdiction is essential to the authority of a court to decide a case.
Rylander v. Caldwell, 23 S.W.3d 132, 135 (Tex. App.--Austin 2000, no pet.) (citing Texas Ass'n
of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 443 (Tex.1993)). "A plea to the jurisdiction
challenges the trial court's authority to determine the subject matter of a specific cause of action." 
Id. (citing Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm'n, 16 S.W.3d
61, 65 (Tex. App.--Austin 2000, no pet.)). In order to prevail, the party asserting the plea to the
jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true,
there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it
impossible for the plaintiff's petition to confer jurisdiction on the trial court. See id.

 Because subject-matter jurisdiction presents a question of law, we review the district
court's decision de novo. Id. In reviewing a trial court's ruling on a plea to the jurisdiction, we do
not look at the merits of the case; rather, we "construe the pleadings in favor of the plaintiff," look
to the pleader's intent, and accept the pleadings' factual allegations as true. Id.

 The district court also granted TCEQ's summary judgment in the event that its grant
of TCEQ's plea to the jurisdiction was inappropriate. Because the propriety of a summary judgment
is also a question of law, we review the district court's decision de novo. Natividad v. Alexsis, Inc.,
875 S.W.2d 695, 699 (Tex. 1994); Texas Dep't of Ins. v. American Home Assurance Co., 998
S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.). The standards for reviewing a motion for
summary judgment are well established: (1) the movant for summary judgment has the burden of
showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter
of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must
be indulged in favor of the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 


DISCUSSION


 Appellants' main issue in this appeal is (1) that TCEQ issued a defective notice of
application that prevented them from filing for a contested-case hearing. They have also raised the
following issues: (2) S.B. 1593 is unconstitutional as a "local law" and therefore, the original and
amended Allens Creek permit, issued pursuant to S.B. 1593, are void; (3) S.B. 1593 violates
appellants' due process rights by commanding the TCEQ to issue a permit without a notice or
hearing; (4) contested-case filing deadlines are tolled until a proper notice is issued; (5) appellants
have in fact exhausted their post-contested-case administrative remedies; and thus, TCEQ improperly
refused appellants' requests for a hearing after the amended permit had been issued; (6) the
Executive Director of the TCEQ did not have authority to issue the amendment to the Allens Creek
permit because the amendment was not "uncontested;" (7) the Allens Creek amended permit violates
provisions set out in S.B. 1593; and (8) based on a substantial-evidence review, the TCEQ issued
the Allens Creek permit amendment in violation of the water code due to the fact that the amendment
impermissibly injures senior water-right holders.


"Defective" notice

 Appellants' central complaint in this case is that TCEQ violated their due process
rights by issuing a defective notice regarding the Allens Creek amendment application. We 
conclude that the Allens Creek amendment notice was not defective as it applied to appellants. 

 The United States Supreme Court has stated: "An elementary and fundamental
requirement of due process in any proceeding which is to be accorded finality is notice reasonably
calculated, under all the circumstances, to apprise interested parties of the pendency of the action and
afford them an opportunity to present their objections." Armstrong v. Manzo, 380 U.S. 545, 550
(1965) (quoting Mullance v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)). "The notice
must be of such nature as reasonably to convey the required information." Mullance, 339 U.S. at
314. This Court has noted in the TCEQ application context that the applicant must provide the
public with notice of its application. United Copper Indus., Inc. v. Grissom, 17 S.W.3d 797, 802
(Tex. App.--Austin 2000, pet. dism'd as moot). This requirement affords individuals who may be
affected by the grant or denial of the permit a meaningful opportunity to voice their concerns and
participate in the permitting process by requesting a contested-case hearing on the permit application.
Id.

 Although appellants admit they received timely notice of the amendment application,
they complain that the notice they received differed materially from the permit TCEQ ultimately
granted. They pose, in essence, a "bait and switch" argument. Appellants point out that the notice
stated that the amended permit would include monthly flow requirements at the Richmond gage to
safeguard downstream water rights. The granted permit, however, included monthly flow
restrictions at a gaging station over thirty miles upstream from the Richmond gage that appellants
contend do not protect downstream water-right holders. They assert that because they were content
with the provisions of the amendment outlined in the notice, they did not file for a contested-case
hearing. They argue that it is unfair to refuse them a hearing now, after the amended permit was
granted, in light of the fact that the amended permit differed materially from the notice they received.

 Although appellants have framed their case in a compelling manner, we reject it. The
amended permit does vary from the notice and the application. In some ways the amended permit
places a greater burden on appellants and in some ways it benefits them. Our task, however, is not
to analyze these differences, but to determine whether appellants had sufficient notice that their
interests were at risk. If appellants had notice that their interests were at risk, the appropriate method
for addressing those concerns would have been through the normal administrative process of a
contested-case hearing.

 We note first that appellants' reliance on the information set forth in the notice itself
is misplaced. The title of the notice is "Notice of Application," as such the notice serves as notice
that an application for a permit or an amendment to a permit has been filed. The water code requires
notice of an application to include the name and address of the applicant, the date the application was
filed, the purpose and extent of the proposed appropriation of water, identify the source of supply
and where the water is to be stored, specify the time and place that the application is going to be
discussed, and give any other information the Commission deems necessary. See Tex. Water Code.
Ann. §11.123 (West 2000). It is clear from the limited amount of information that must be included
in a notice statement that the notice itself is not intended to fully apprise potentially affected parties
of the specifics of the proposed permit. Those specifics are found in the application and its
supplemental materials, all of which are available to the public.

 In Sand Supply's case, the terms of the notice itself alerted them, or should have, that
their water-right interests were at risk. Sand Supply's permit is governed by a stream flow restriction
of 1,130 cfs measured at the Richmond gage for several months of the year. The notice indicates that
the Allens Creek permitee would only be required to release its reservoir waters when the Richmond
gage indicated that stream flows had dipped below 1,100 cfs. Furthermore, the amendment
application and supporting materials, to which Sand Supply had access, definitely specified certain
stream flow restrictions that undoubtedly put Sand Supply on notice that they would need to file for
a contested-case hearing in order to protect their interests. Although the amendment notice stated
in a general way that senior water-right holders would be protected by monthly stream flow
restrictions measured at the Richmond gage, the application and its supporting materials specified
flow rate restrictions that are in some cases several hundred cubic feet per second below Sand
Supply's stream flow restrictions measured at the same gage. Sand Supply cannot rely on a general
statement in the application notice when it had full access to the facts detailed in the application and
its supporting materials. Therefore, in Sand Supply's case, although the notice and application
differed from the granted amendment, Sand Supply was on notice that the amendment as outlined
in the application and supporting materials would adversely affect it. Under the facts presented here,
we conclude that Sand Supply was given "notice reasonably calculated, under all the circumstances,
to apprise interested parties of the pendency of the action and afford them an opportunity to present
their objections." Manzo, 380 U.S. at 550. Sand Supply's failure to take advantage of that
opportunity constituted a waiver of its administrative rights.

 As to Chocolate Bayou, although Chocolate Bayou's stream flow restriction is not
measured at the Richmond gage and thus the number differentials are not as clear, Chocolate
Bayou's own expert indicated in his affidavit to the district court that Chocolate Bayou's water right
would be protected only if the Allens Creek permit contained stream flow conditions far in excess
of what the application and its supporting materials proposed. Therefore, Chocolate Bayou was put
on notice by the application and its supporting materials, to which they had access, that its water-right interests were in jeopardy and yet failed to request a contested-case hearing. Thus, under these
facts, we conclude that appellants are attempting to use the differences between the amendment
application and the amended permit to launch an impermissible collateral attack on TCEQ's final
order. Because appellants received notice that adequately apprised them that their water-right
interests were at risk, appellants' concerns about the amendment should have been brought through
a contested-case hearing. We overrule appellants' first issue.


Local law and due process claims

 Appellants assert that S.B. 1593 is unconstitutional (1) because it is a "local law" that
specifically required TCEQ to issue the Allens Creek permit by name and (2) because it required
TCEQ to issue the Allens Creek permit without notice or hearing. TCEQ responds that appellants
do not have standing to bring these claims because they did not exhaust their administrative remedies
and therefore these claims merely operate as collateral attacks on the Commission's final order. 
Appellants respond that their claims contesting S.B. 1593 are not impermissible collateral attacks
because, if in fact S.B. 1593 is an unconstitutional law, then the original Allens Creek permit is void;
and therefore, they conclude, the amended Allens Creek is also void. We conclude that appellants'
claims against S.B. 1593 are impermissibly collateral.

 It is well settled that a party must exhaust its administrative remedies before seeking
judicial review of an agency decision. See Tex. Gov't Code Ann. § 2001.171 (West 2000); see also
Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan, 51 S.W.3d 293, 294-95 (Tex. 2001). This Court has
held that the requirement of seeking a remedy with the administrative agency is jurisdictional rather
than a matter going solely to a plaintiff's right to relief. See Hill v. Board of Trs., Ret. Sys., 40
S.W.3d 676, 678 (Tex. App.--Austin 2001, no pet.). Appellants contend that the exhaustion
doctrine does not control this case because certain exceptions apply. They argue that they should
not be required to exhaust their administrative remedies when their challenge of agency action is
based on questions of law. See Grounds v. Tolar Indep. Sch. Dist., 707 S.W.2d 889, 892 (Tex.
1986). They further contend that the doctrine of exhaustion of remedies does not apply to their
constitutional claims because the Commission does not have exclusive jurisdiction to decide whether
S.B. 1593 is constitutional, in fact it has no jurisdiction to decide such a claim. See Butnaru v. Ford,
84 S.W.3d 198, 207-08 (Tex. 2002); see also Texas State Bd. of Pharmacy v. Walgreen Tex. Co.,
520 S.W.2d (Tex. App.--Austin 1975, writ ref'd n.r.e).

 TCEQ responds that, notwithstanding these exceptions, appellants' suits were filed
after TCEQ's issuance of the amended permit, which constitutes a final order, and therefore these
exceptions do not control. TCEQ urges this Court to apply our holding in Friends of Canyon Lake,
Inc. v. Guadalupe-Blanco River Authority--that in circumstances wherein the plaintiff neglected to
bring any challenges to a state agency's action until after the final order was issued, the district court
could not properly hear the plaintiff's claims because the claims were collateral attacks on the agency
action. 96 S.W.3d 519 (Tex. App.--Austin 2002, pet. denied). We agree with TCEQ's argument.

 In this case, where the dispute focuses on issuance of an amendment after a lengthy
administrative process, these exceptions to the exhaustion doctrine could only have been invoked
if appellants had sought judicial relief before the final agency order. For example, in Yamaha v.
Motor Vehicle Div., 860 S.W.2d 223 (Tex. App.--Austin 1993, writ denied), the plaintiff, for the
first time in its judicial review action in court, challenged an order issued by the Texas Motor
Vehicle Commission partly on the grounds that the Commission had exceeded its statutory authority. 
This Court rejected the challenge because Yamaha failed to assert such an argument before the final
order was issued: 


We recognize that in certain limited circumstances, e.g., when an agency acts outside
its constitutional or statutory authority, a party may challenge the agency's action
independent of the procedural requirements imposed by APTRA in a statutory suit
for judicial review. . . . This exception, however, allows a party to challenge the
agency's action prior to the rendition of a final order.


Id. at 229 (citations omitted).

 In this case, S.B. 1593 allowed the old Houston Lighting & Power permit to be
reissued to TWDB in 1999, yet appellants did not complain about the bill until after TCEQ granted
the amended permit in 2002 when it filed suit in district court. The present facts are substantially
analogous to those in Friends. See Friends, 96 S.W.3d 519. In Friends, the plaintiffs asserted that
the agency that applied for an amendment to its water permit had done so in violation of the open
meetings act. Id. After the Commission had granted the amended permit, the plaintiffs filed suit
alleging an open meetings violation. Id. We concluded that there had not been an open meetings
act violation; however, we went on to question how the propriety of the other agency's actions could
have affected a duly granted permit. Id. at 532. Even if the application had been sent to the
Commission in violation of the open meetings act, the Commission passed it properly. Id. 
Therefore, we concluded that even if we had found the application in violation of the open meetings
act, we could not have voided the permit. Id. Although, as appellants argue, their claims deal with
the constitutionality of a bill and not the propriety of an agency action, the end result is the same. 
Even if the original Allens Creek permit was granted pursuant to an improper legislative enactment,
the Commission properly granted the amended permit. Collateral attacks upon an agency order may
be maintained successfully on one ground alone--that the order is void. Lesikar v. Rappeport, 33
S.W.3d 282, 316 (Tex. App.--Texarkana 2000, pet. denied) (citing Gulf States Utils. Co. v.
Coalition of Cities for Affordable Util. Rates, 883 S.W.2d 739, 758 (Tex. App.--Austin 1994)
(Powers, J., dissenting), rev'd on other grounds, 947 S.W.2d 887 (Tex.1997)). An agency order may
be void in the requisite sense on either of two grounds: 1) the order shows on its face that the agency
exceeded its authority, or 2) a complainant shows that the order was procured by extrinsic fraud. Id. 
As to the amended permit, neither of those conditions are met. Therefore, at this juncture, any
analysis by this court on the constitutionality of S.B. 1593 would merely serve as an impermissible
advisory opinion because, rather than remedying actual harm, it would address only a hypothetical
injury. See Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993). We
conclude that appellants' attacks on S.B. 1593 are impermissible collateral attacks against a final
agency order. We therefore overrule appellants' second and third issues.


Post-contested-case administrative remedies

 Appellants assert (4) that they have in fact exhausted their post-contested-case
administrative remedies, and thus this Court should review TCEQ's refusal to grant an extension for
rehearing. Administrative remedies must be exhausted before a district court may hear the issue as
a jurisdictional matter. See Hill, 40 S.W.3d at 678. Appellants failed to timely request a contested-
case hearing. Appellants, however, argue that they have exhausted their administrative remedies
through their filings for rehearing. The Texas Administrative Code states: "A motion for rehearing
is a prerequisite to appeal." 30 Tex. Admin. Code Ann. § 80.271 (2003). As appellants have filed
for rehearing and thus exhausted available administrative remedies with regard to post-contested-case filings, we will determine whether TCEQ appropriately denied appellants' extension filings,
appropriately refused to place appellants' objections on the Commission docket, and ultimately
properly refused to grant a hearing.

 Appellants claim that TCEQ abused its discretion by refusing appellants' requests for
a filing-extension, by refusing to place their objections on the Commission docket, and ultimately
by refusing to grant appellants a hearing. TCEQ is afforded the option of granting extended time
limits for the filing of motions. See 30 Tex. Admin. Code Ann. § 80.272 (2003). Appellants
specifically complain that TCEQ has allowed extensions in the past, that TCEQ has unpublished
guidelines by which it determines whether or not to grant extensions, and that TCEQ is acting
arbitrarily by denying appellants' requests. Appellants rely on United Copper Indus., Inc. v.
Grissom, 17 S.W.3d 797, 805 (Tex. App.--Austin 2000, dism'd as moot), to support their contention
that TCEQ cannot rely on guidelines that it does not publish. However, Grissom involved TCEQ
refusing a hearing because evidence was not submitted with the timely-filed hearing request. Id. 
Neither the notice in that case nor the agency's published rules required such evidence to be
submitted concurrently with the request for hearing. Id.

 The factual underpinnings of Grissom are quite different from the present case. See
id. Appellants did not timely request a hearing. The notice and the agency rules are definitive on
filing deadlines. TCEQ is not required to grant extensions at all. TCEQ stated in a letter to
appellants that it was its policy not to grant filing extensions unless the extension filings were made
by the filing deadline or as a result of a natural disaster, such as a hurricane. TCEQ was not required
to provide an explanation of its denial. These are internal guidelines by which TCEQ exercises its
statutory discretion and are reasonable. The other two complaints by appellants--that TCEQ erred
by not including appellants' objections on the Commission docket and refusing to grant them a
hearing--are by-products of TCEQ's refusal to grant appellants an extension. We conclude that
TCEQ did not abuse its discretion on the facts presented here. We overrule appellants' fifth issue.


Executive Director's authority

 Appellants next claim that the Executive Director of TCEQ did not have authority
to issue the amendment to the Allens Creek permit because the amendment was not "uncontested." 
The Texas Water Code provides for the delegation of uncontested matters to the Executive Director
of the Commission. See Tex. Water Code Ann § 5.122 (West 2000). Agency rules provide that such
action is appropriate provided that:


(1) public notice requirements have been satisfied and the executive director has
considered the public comment and filed a response; 


(2) the application meets all the relevant statutory and administrative criteria; 


(3) the application does not raise new issues that require interpretation of
commission policy; 


(4) the executive director's staff and public interest counsel do not raise objections;
and 


(5) the application is uncontested because: (A) no timely requests for
reconsideration or contested case hearing are filed with the clerk; (B) the
applicant and persons who timely filed requests for reconsideration or contested
case hearing have agreed in writing to the action to be taken by the executive
director; (C) any timely requests for reconsideration or contested case hearing
have been withdrawn or have been denied; (D) a settlement was reached in a
contested case hearing, and the application has been remanded from SOAH; or
(E) a contested case hearing has been filed but no opportunity for hearing is
provided by law.



30 Tex. Admin. Code § 50.133 (2002).

 Appellants argue that the Executive Director was not authorized to grant the Allens
Creek amendment because none of the aforementioned provisions were met. We disagree because:
(1) as we have discussed above, appellants received proper notice and appellants have not shown that 
the Executive Director did not consider or respond to public comment that was timely made; (2) the
application does meet statutory guidelines--including the protection of senior water-right holders
(issue discussed below); (3) even though this amendment was pursuant to a "first of its kind"
reissued permit, the amendment process and the issues involved are not "new issues that required
interpretation of commission policy;" (4) although the Public Interest Counsel of TCEQ did lodge
an objection to the amendment notice--in response to appellants' motions for rehearing--it did not
do so until after the Executive Director granted the amendment; and (5) the application was not
under timely protest at the time the Executive Director granted the permit. Each of the provisions
limiting when an Executive Director may act are time-sensitive. Although the amendment was 
contested by appellants, their protests were not timely and thus the Executive Director was not
precluded from acting when he did. We overrule appellants' sixth issue.


Appropriate review of the Allens Creek amended permit

 Appellants also argue (1) that provisions of S.B. 1593 outline specific
protections--stream flow restrictions--for senior water-right holders which were not included in the
amended Allens Creek permit and (2) that, based on a substantial-evidence review, TCEQ issued the
Allens Creek permit amendment in violation of the water code due to the fact that the amendment
impermissibly injures senior water-right holders. This Court may not properly review appellants'
complaints because they were not first brought in a contested-case hearing. See Tex. Gov't Code
Ann. § 2001.171; Hill, 40 S.W.3d at 678. As we have concluded above, appellants were on notice
that the Allens Creek amendment application requested terms that arguably could adversely affect
appellants' interests. The application and supporting materials indicated that, instead of using strict
stream flow restrictions, the amended permit would protect senior water-right holders by instituting
"call" provisions wherein a senior right-holder may call the Allens Creek permitee to compel it to
release water from the Allens Creek reservoir in order to bring the Brazos water level back up to a
level that would allow senior water-right holders to divert water pursuant to their permits. Although
these provisions may be onerous for appellants, it is not clear that they detract from their legal right
to a specified amount of water. How a senior water-right holder's water right will be protected in
practice is exactly the kind of issue that should be brought in a contested-case hearing. Appellants
waived the issue by not requesting a contested-case at the appropriate time. We overrule appellants'
seventh and eighth issues.


CONCLUSION


 Having overruled all appellants' issues, we affirm the judgment of the district court.



 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed

Filed: December 18, 2003
1. By statute effective September 1, 2001, the legislature changed the name of the Texas
Natural Resource Conservation Commission to the Texas Commission on Environmental Quality,
to be effective January 1, 2004. The statute granted the TNRCC authority to adopt a timetable for
phasing in the change of the agency's name, so that until January 1, 2004, the agency may perform
any act authorized by law under either title. See Act of April 20, 2001, 77th Leg., R.S., ch. 965,
§ 18.01, 2001 Tex. Gen. Laws 1985. On September 1, 2002, the agency began using its new name,
while continuing to recognize the former. We will refer to the agency as TCEQ.
2. TCEQ is not statutorily mandated to send the application with the notice. See Tex. Water
Code. Ann. § 11.132 (West 2000). The application, however, is on file with TCEQ and is available
to the public. Neither appellant contests that it was given access to the permit application and
supporting materials.
3. The contested-case hearing timetable allows the commission to act on an application thirty
days after the publication of notice if no claimant has requested a contested-case hearing. See Tex.
Water Code. Ann. §11.132 (d). Appellants concede that their request for a contested-case hearing
was not timely.
4. Appellants also asserted in their fourth issue that if the notice of the amendment is
defective, contested-case filing deadlines are tolled until a proper notice is issued. Because this
Court has not concluded that appellants' notice was defective, we overrule appellants' fourth issue.