# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00063-CV

**Bradley Allen Zielinski, Appellant**

**v.**

**Jeannette Eduviges Zielinski, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 291.890-E, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Bradley Allen Zielinski filed a petition for bill of review in Bell County district court, seeking to vacate a two-year-old divorce decree and have the marriage annulled. He alleges Jeannette Eduviges Zielinski, his ex-wife, lied about her age when they met in 2000, inducing him into marriage so that she might gain permanent residency in the United States. The two divorced relatively amicably after fourteen years of marriage, with Bradley apparently still unaware of Jeannette's actual age. Upon Bradley's marriage to a second wife in 2017, he filed this petition, which the trial court denied after a hearing on the merits. We will affirm.

## BACKGROUND

Although the parties disagree as to the details of their personal history, the general narrative is not disputed. Bradley and Jeannette met in late 2000 at Fort Hood, Texas. At the time, Bradley was a 22-year-old captain in the United States Army and, by his account, hoping to marry

and start a family. Jeannette, born in Panama in 1963, was 37 at the time and had a ten-year-old daughter from a previous marriage. According to Bradley, while the two were dating, Jeannette maintained that she was born in 1973 and was 27 instead of 37 years old. Jeannette now concedes that she was born in 1963 and was 37 years of age when the two met and dated.

Bradley and Jeannette married at a courthouse in Fayetteville, North Carolina, on March 10, 2001, with Jeannette listing May 17, 1973, as her date of birth on the marriage license. Bradley subsequently adopted Jeannette's daughter and helped the two obtain permanent residency in the United States by serving as their sponsor before Immigration Services. Over the next several years, the couple tried to have a child together. Jeannette suffered three miscarriages, leading her to consult a series of specialists. In retrospect, Bradley now attributes the infertility to Jeannette's advanced age—an age he allegedly did not know at the time—and avers that medical testing "showed he did not have any fertility issues." Jeannette, meanwhile, attributes the miscarriages to the stress resulting from military life and from Bradley's conceded infidelity. She describes Bradley as unwilling to undergo any further testing or treatment after his original lab results were negative and alleges she withdrew $15,000 from her own retirement account to pay for the costs of in vitro fertilization not covered by insurance.

Bradley and Jeannette sought marital counseling and renewed their vows in 2007 but ultimately separated in 2010. Bradley filed for divorce in Bell County in 2014. The couple drafted an agreed division of the estate and the court rendered a final decree of divorce on June 11, 2015. That decree requires Bradley to provide monthly spousal maintenance of $1,217.10 to Jeannette

2

beginning April 1, 2015, and continuing for four years or until Jeannette remarries, whichever date occurs earlier.

Bradley eventually remarried. As he describes it, his second wife "became suspicious of [Bradley's] previous marriage and convinced him to hire a private investigator." It is not clear what caused her to become suspicious of the first marriage. Regardless, after that investigator and a second investigator uncovered multiple documents revealing Jeannette's actual age and evidence she had knowingly misled Bradley regarding her birth date, Bradley filed a petition for bill of review seeking to vacate the divorce decree, relieve himself of his obligations thereunder, annul the marriage, and recover alleged damages from Jeannette. After two days of testimony on the merits, the district court denied Bradley's petition without rendering findings of fact or conclusions of law. Bradley now appeals from that order. Both Bradley and Jeannette appear before this Court pro se.

## LEGAL STANDARD

A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal. *See Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015) (per curiam); *Wiegrefe v. Wiegrefe*, No. 03-16-00665-CV, 2017 WL 3908645, at *2 (Tex. App.—Austin Aug. 29, 2017, no pet.) (mem. op.). "Although it is an equitable proceeding, the fact that an injustice has occurred is not sufficient to justify relief by bill of review." *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999) (citing *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950)). "[T]o be successful upon a bill of review, the complainant must allege and prove: (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which he was prevented from making by the fraud,

3

accident or wrongful act of the opposite party . . . (3) unmixed with any fault or negligence of his own." *Arndt v. Arndt*, 714 S.W.2d 86, 87–88 (Tex. App.—Houston [14th Dist.] 1986, no writ). "We review the trial court's ruling on a bill of review for an abuse of discretion . . . indulg[ing] every presumption in favor of that ruling." *Interaction, Inc. v. State*, 17 S.W.3d 775, 778 (Tex. App.—Austin 2000, pet. denied). "A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles." *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

## DISCUSSION

Bradley contends he is entitled to a bill of review because he would have sought annulment, rather than divorce, by alleging marital fraud if he had known Jeannette's actual age at the time they met. The permissible grounds for annulment are set forth in chapter 6 of the Family Code. Section 6.107 provides, "The court may grant an annulment of a marriage to a party to the marriage if: the other party used fraud, duress, or force to induce the petitioner to enter into the marriage and the petitioner has not voluntarily cohabited with the other party since learning of the fraud or since being released from the duress or force." Tex. Fam. Code § 6.107 (subsection identifiers omitted). "Fraudulent inducement is established by proving that a false material representation was made that: (1) was known to be false when it was made, (2) was intended to be acted upon, (3) was relied upon, and (4) caused injury." *Leax v. Leax*, 305 S.W.3d 22, 29 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (discussing elements of marital fraud).

In support of the argument that he would have prevailed on a claim of marital fraud if he had known Jeannette's age, Bradley introduced four documents into evidence:

4

- a certified translation of Jeannette's birth certificate reflecting a birth date of 5/17/1963;

- a certified copy of the marriage license listing Jeannette's birth date as 5/17/1973;

- a "true and exact" copy of Jeannette's college transcript showing an enrollment date in 1982, when, by her claimed birth date, she would have been nine years old; and

- a copy of Jeannette's military ID card, which she obtained upon providing proof of her marriage to Bradley, reflecting a stated birth date of 5/17/1973.

In addition, Bradley testified that Jeannette had used an altered version of her birth certificate to reinvent herself as a decade younger when she relocated to the United States, although he did not provide the court with a copy of that alleged certificate. He also recounted several conversations with private investigators and physicians in which those professionals summarized additional evidence Jeannette had knowingly misrepresented her age. Jeannette, appearing pro se, did not object to this testimony.[1] Bradley described thousands of dollars of losses he had incurred as a result of the marriage and characterized his credit rating as "completely destroyed" on account of Jeannette's allegedly poor financial decisions. Finally, Bradley testified that he would not have married Jeannette if he had known she was 37 instead of 27 years of age, explaining that the fifteen year difference was "too big of an age gap, wanting kids at the time."

This evidence, taken as a whole, does not conclusively establish marital fraud, but it suggests Bradley might have successfully raised this claim if he had known of Jeannette's age and the surrounding facts and circumstances during the divorce. He produced evidence Jeannette

---

[1] Courts hold pro se litigants to the same standard as those represented by counsel. *United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 805 n.6 (Tex. App.—Austin 2000, pet. dism'd).

knowingly misrepresented her age and caused Bradley to rely upon that misrepresentation to enter into the marriage to his detriment. *Id.* And although he did not produce any direct evidence that Jeannette intended for Bradley to rely on the misrepresentation, Texas law allows the finder of fact to infer such an intent from the facts and circumstances surrounding allegations of fraud. *See, e.g.*, *Spoljaric v. Percival Tours, Inc*., 708 S.W.2d 432, 434 (Tex. 1986) ("While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made." (citations omitted)); *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 879 (Tex. App.—Austin 2006, pet. dism'd by agr.) ("Intent tends to be a fact question uniquely within the realm of the trier of fact because it so depends on the credibility of witnesses and the weight given to their testimony." (citing *Spoljaric*, 184 S.W.3d at 434)). We will therefore assume without deciding that Bradley could have prevailed on a suit for annulment based on marital fraud if timely filed in 2014.

But even assuming, for the sake of argument, Bradley would have obtained an annulment if his allegations of marital fraud had been timely raised, the district court did not abuse its discretion in denying his petition for bill of review under the circumstances presented here. A petitioner is not entitled to a bill of review if his prior failure to raise a potentially meritorious claim or defense is due in part to any fault or negligence on his part. *Arndt*, 714 S.W.2d at 87–88. In response to Bradley's evidence of fraud, Jeannette offered compelling testimony that Bradley knew or should have known her actual age by the time the couple divorced in 2014. She testified that over the course of the marriage, the couple had jointly undertaken paperwork related to the marriage itself, the adoption, the immigration, their military assignments and benefits, several housing applications,

6

marital counseling, and medical treatments for infertility. She indicated that her correct age was listed on many of those documents. Yet she testified that at no time did he question her age, even when discrepancies arose regarding the birth date and even when a physician observed that one of her medical conditions—a type of uterine fibroid—is typically only seen in older women. As she described it, "in fourteen and a half years of marriage, it's impossible that he never read any single document." She further testified that conclusive evidence of her actual age, including the documents Bradley submitted to the district court at the hearing on the bill for review, was readily available to him in an unlocked file cabinet and on an unsecured shared hard drive. And Bradley himself conceded that he ultimately obtained the evidence submitted to the district court through resources that had been freely available to him for years. In other words, regardless of whether Jeannette misrepresented her age during their courtship, Bradley's lost opportunity to seek an annulment on that basis was due in part to his own failure to exercise diligence in preparing for the divorce proceedings.

Indulging every inference and presumption in favor of the district court's ruling, as we must, we conclude the court could reasonably have concluded that Bradley failed to "exercise[] due diligence in pursuing all adequate legal remedies" during the dissolution of his marriage in 2014. *See Herrera*, 11 S.W.3d at 927. Because evidence to support Bradley's desired remedy was "available but ignored" at the time of the divorce, *id.*, the district court did not abuse its discretion in denying his petition for bill of review. We therefore overrule Bradley's sole issue on appeal and affirm the order denying the petition.

**CONCLUSION**

Having identified no abuse of discretion by the district court, we affirm its order.

_____

Edward Smith, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   February 8, 2019