# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00143-CV

**Chocolate Bayou Water Company and Sand Supply, A Division of Campbell Concrete and Materials, L.P., Appellants**

**v.**

**Texas Natural Resource Conservation Commission; City of Houston, Texas; Brazos River Authority; and Texas Water Development Board, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. GN201029, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## O P I N I O N

Appellants, Chocolate Bayou Water Company and Sand Supply appeal a district-court grant of a plea to the jurisdiction, and in the alternative, summary judgment, dismissing their suit against appellees, the Texas Natural Resource Conservation Commission,[1] the City of Houston, the Brazos River Authority, and the Texas Water Development Board ("TWDB") (collectively "TCEQ"). Appellants' central complaint is that TCEQ issued a defective notice concerning the

_____

[1] By statute effective September 1, 2001, the legislature changed the name of the Texas Natural Resource Conservation Commission to the Texas Commission on Environmental Quality, to be effective January 1, 2004. The statute granted the TNRCC authority to adopt a timetable for phasing in the change of the agency's name, so that until January 1, 2004, the agency may perform any act authorized by law under either title. See Act of April 20, 2001, 77th Leg., R.S., ch. 965, § 18.01, 2001 Tex. Gen. Laws 1985. On September 1, 2002, the agency began using its new name, while continuing to recognize the former. We will refer to the agency as TCEQ.

amendment application to the reissued Allens Creek water permit that prevented appellants from timely requesting a contested-case hearing on the amendment application. Appellants contend that the notice of the application was defective because general language in the notice differed from the amended permit the Commission actually granted. Appellants have also alleged: (1) Senate Bill 1593, which authorized the Allens Creek permit and its amendment, is unconstitutional as a "special" or "local" law; (2) Senate Bill 1593 violated appellants' due process rights by authorizing TCEQ to issue TWDB this permit without notice or hearing; and (3) the amended permit infringes appellants' senior water rights in violation of the Texas Water Code. TCEQ filed a plea to the jurisdiction. In addition, both appellants and TCEQ filed motions for summary judgment. The district court granted TCEQ's plea to the jurisdiction and in the alternative, also granted TCEQ's summary judgment. We will affirm.

**BACKGROUND**

The first Allens Creek permit was issued to Houston Lighting & Power in 1974 for the purpose of providing a cooling reservoir for a proposed power plant. The power plant was never built, and the permit was canceled ten years later at the request of Houston Lighting & Power. In 1999, the Texas legislature passed Senate Bill 1593 ("S.B. 1593"), a comprehensive water plan that contained a provision that specifically required TCEQ, the state agency charged with managing water permitting, to reissue the Allens Creek permit to TWDB for the purpose of supplying Houston with municipal water. Because the reissued permit retained all the provisions of the first permit but was intended for a different purpose, the bill also provided that the reissued permit could be amended and that the amendment application would have to meet the notice and hearing requirements of the water

2

code. Further, S.B. 1593 allowed TWDB to transfer the Allens Creek permit to another political subdivision. TWDB has since shared its permit with the Brazos River Authority and the City of Houston.

TWDB filed an application to amend the Allens Creek permit in June 2000. Senior water-right holders, those that hold permits predating the Allens Creek reissued permit, were mailed a notice of the application. Both Chocolate Bayou and Sand Supply hold water rights senior to TWDB's Allens Creek permit; both were duly given notice of the amendment application. The notice met the sparse statutory requirements of the water code and further indicated that the amended Allens Creek permit would contain stream flow restrictions measured at the Richmond gage that would "safeguard downstream water rights." *See* Tex. Water Code. Ann. § 11.132 (West 2000). Stream flow restrictions are one method that TCEQ uses to protect senior water rights. TCEQ may assign a permitee a stream flow restriction. When the river flows below that specified number, the permitee can no longer divert water from the river. Thus, a low stream flow restriction allows the permitee to divert more water than a high restriction. Allens Creek is located upstream from Chocolate Bayou and Sand Supply on the Brazos River.

Chocolate Bayou was sent a copy of the application for amendment along with the notice. Sand Supply stated at oral argument that they did not get a copy of the application until much later.[2] Because the application is a sparse and highly technical document, TCEQ requested, and TWDB filed, more detailed supporting materials along with its application. Both the application and

---

[2] TCEQ is not statutorily mandated to send the application with the notice. *See* Tex. Water Code. Ann. § 11.132 (West 2000). The application, however, is on file with TCEQ and is available to the public. Neither appellant contests that it was given access to the permit application and supporting materials.

supporting materials were on file and open to review by the public. Once the application for amendment was filed, the Brazos River Authority, co-holder of the Allens Creek permit, conducted a series of "road shows" wherein they discussed the amendment they were seeking with senior water-right holders. Appellants contend that during these meetings, the Brazos River Authority described the Allens Creek permit as a "scalping operation" that would only divert water from the Brazos River during high-water periods.

In March 2001, appellants obtained copies of the draft amended permit. At that time the permit had not yet been formally adopted. The amended permit contained stream flow restrictions measured at a gage over thirty miles upstream from the Richmond gage, a location much closer to the actual diversion point of the Allens Creek permit. It also specified stream flow restrictions that both appellants now claim impair their senior water rights. After receiving its copy of the draft amended permit, Chocolate Bayou filed a request for an evidentiary hearing with TCEQ. In May 2001, Sand Supply requested a formal contested-case hearing regarding the amended permit. However, neither appellant could request a contested-case hearing at that time because the timetable for contested-case filings had elapsed.[3] Both appellants filed several requests for rehearing over the following months. Each request was denied by the Commission. On January 16, 2002, TCEQ formally granted the amended Allens Creek permit.

Appellants filed suit for judicial review in district court. Appellants' main complaint is that the notice of amendment TCEQ issued to senior water-right holders was defective because

_____

[3] The contested-case hearing timetable allows the commission to act on an application thirty days after the publication of notice if no claimant has requested a contested-case hearing. *See* Tex. Water Code. Ann. §11.132 (d). Appellants concede that their request for a contested-case hearing was not timely.

4

it differed materially from the amended permit that TCEQ ultimately granted, and appellants' reliance on the defective notice prevented them from filing for a contested-case proceeding regarding the Allens Creek permit amendment thereby depriving them of due process.  In their district court lawsuit, appellants complained for the first time that the original permit issued pursuant to S.B. 1593 was unconstitutional because S.B. 1593 is an impermissible "local law" and because the legislature required TCEQ to issue the Allens Creek permit without notice or hearing.  Appellants also claimed that TCEQ had acted unlawfully by issuing the amended Allens Creek permit in the face of appellants' protests.  The district court dismissed appellants' claims pursuant to TCEQ's plea to the jurisdiction and in the alternative granted TCEQ summary judgment.

### STANDARD OF REVIEW

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993)).  "A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action." *Id*. (citing *Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.)).  In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *See id.*

Because subject-matter jurisdiction presents a question of law, we review the district court's decision *de novo. Id.*  In reviewing a trial court's ruling on a plea to the jurisdiction, we do

5

not look at the merits of the case; rather, we "construe the pleadings in favor of the plaintiff," look to the pleader's intent, and accept the pleadings' factual allegations as true. *Id.*

The district court also granted TCEQ's summary judgment in the event that its grant of TCEQ's plea to the jurisdiction was inappropriate. Because the propriety of a summary judgment is also a question of law, we review the district court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

## DISCUSSION

Appellants' main issue in this appeal is (1) that TCEQ issued a defective notice of application that prevented them from filing for a contested-case hearing. They have also raised the following issues: (2) S.B. 1593 is unconstitutional as a "local law" and therefore, the original and amended Allens Creek permit, issued pursuant to S.B. 1593, are void; (3) S.B. 1593 violates appellants' due process rights by commanding the TCEQ to issue a permit without a notice or hearing; (4) contested-case filing deadlines are tolled until a proper notice is issued; (5) appellants have in fact exhausted their post-contested-case administrative remedies; and thus, TCEQ improperly

6

refused appellants' requests for a hearing after the amended permit had been issued; (6) the Executive Director of the TCEQ did not have authority to issue the amendment to the Allens Creek permit because the amendment was not "uncontested;" (7) the Allens Creek amended permit violates provisions set out in S.B. 1593; and (8) based on a substantial-evidence review, the TCEQ issued the Allens Creek permit amendment in violation of the water code due to the fact that the amendment impermissibly injures senior water-right holders.

**"Defective" notice**

Appellants' central complaint in this case is that TCEQ violated their due process rights by issuing a defective notice regarding the Allens Creek amendment application. We conclude that the Allens Creek amendment notice was not defective as it applied to appellants.

The United States Supreme Court has stated: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) (quoting *Mullance v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). "The notice must be of such nature as reasonably to convey the required information." *Mullance*, 339 U.S. at 314. This Court has noted in the TCEQ application context that the applicant must provide the public with notice of its application. *United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 802 (Tex. App.—Austin 2000, pet. dism'd as moot). This requirement affords individuals who may be affected by the grant or denial of the permit a meaningful opportunity to voice their concerns and

7

participate in the permitting process by requesting a contested-case hearing on the permit application. *Id.*

Although appellants admit they received timely notice of the amendment application, they complain that the notice they received differed materially from the permit TCEQ ultimately granted. They pose, in essence, a "bait and switch" argument. Appellants point out that the notice stated that the amended permit would include monthly flow requirements at the Richmond gage to safeguard downstream water rights. The granted permit, however, included monthly flow restrictions at a gaging station over thirty miles upstream from the Richmond gage that appellants contend do not protect downstream water-right holders. They assert that because they were content with the provisions of the amendment outlined in the notice, they did not file for a contested-case hearing. They argue that it is unfair to refuse them a hearing now, after the amended permit was granted, in light of the fact that the amended permit differed materially from the notice they received.

Although appellants have framed their case in a compelling manner, we reject it. The amended permit does vary from the notice and the application. In some ways the amended permit places a greater burden on appellants and in some ways it benefits them. Our task, however, is not to analyze these differences, but to determine whether appellants had sufficient notice that their interests were at risk. If appellants had notice that their interests were at risk, the appropriate method for addressing those concerns would have been through the normal administrative process of a contested-case hearing.

We note first that appellants' reliance on the information set forth in the notice itself is misplaced. The title of the notice is "Notice of Application," as such the notice serves as notice

8

that an *application* for a permit or an amendment to a permit has been filed. The water code requires notice of an application to include the name and address of the applicant, the date the application was filed, the purpose and extent of the proposed appropriation of water, identify the source of supply and where the water is to be stored, specify the time and place that the application is going to be discussed, and give any other information the Commission deems necessary. *See* Tex. Water Code. Ann. §11.123 (West 2000). It is clear from the limited amount of information that must be included in a notice statement that the notice itself is not intended to fully apprise potentially affected parties of the specifics of the proposed permit. Those specifics are found in the application and its supplemental materials, all of which are available to the public.

In Sand Supply's case, the terms of the notice itself alerted them, or should have, that their water-right interests were at risk. Sand Supply's permit is governed by a stream flow restriction of 1,130 cfs measured at the Richmond gage for several months of the year. The notice indicates that the Allens Creek permitee would only be required to release its reservoir waters when the Richmond gage indicated that stream flows had dipped below 1,100 cfs. Furthermore, the amendment application and supporting materials, to which Sand Supply had access, definitely specified certain stream flow restrictions that undoubtedly put Sand Supply on notice that they would need to file for a contested-case hearing in order to protect their interests. Although the amendment notice stated in a general way that senior water-right holders would be protected by monthly stream flow restrictions measured at the Richmond gage, the application and its supporting materials specified flow rate restrictions that are in some cases several hundred cubic feet per second *below* Sand Supply's stream flow restrictions measured at the same gage. Sand Supply cannot rely on a general

9

statement in the application notice when it had full access to the facts detailed in the application and its supporting materials. Therefore, in Sand Supply's case, although the notice and application differed from the granted amendment, Sand Supply was on notice that the amendment as outlined in the application and supporting materials would adversely affect it. Under the facts presented here, we conclude that Sand Supply was given "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Manzo*, 380 U.S. at 550. Sand Supply's failure to take advantage of that opportunity constituted a waiver of its administrative rights.

As to Chocolate Bayou, although Chocolate Bayou's stream flow restriction is not measured at the Richmond gage and thus the number differentials are not as clear, Chocolate Bayou's own expert indicated in his affidavit to the district court that Chocolate Bayou's water right would be protected only if the Allens Creek permit contained stream flow conditions far in excess of what the application and its supporting materials proposed. Therefore, Chocolate Bayou was put on notice by the application and its supporting materials, to which they had access, that its water-right interests were in jeopardy and yet failed to request a contested-case hearing. Thus, under these facts, we conclude that appellants are attempting to use the differences between the amendment application and the amended permit to launch an impermissible collateral attack on TCEQ's final order. Because appellants received notice that adequately apprised them that their water-right interests were at risk, appellants' concerns about the amendment should have been brought through a contested-case hearing. We overrule appellants' first issue.

10

**Local law and due process claims**

Appellants assert that S.B. 1593 is unconstitutional (1) because it is a "local law" that specifically required TCEQ to issue the Allens Creek permit by name and (2) because it required TCEQ to issue the Allens Creek permit without notice or hearing. TCEQ responds that appellants do not have standing to bring these claims because they did not exhaust their administrative remedies and therefore these claims merely operate as collateral attacks on the Commission's final order. Appellants respond that their claims contesting S.B. 1593 are not impermissible collateral attacks because, if in fact S.B. 1593 is an unconstitutional law, then the original Allens Creek permit is void; and therefore, they conclude, the amended Allens Creek is also void. We conclude that appellants' claims against S.B. 1593 are impermissibly collateral.

It is well settled that a party must exhaust its administrative remedies before seeking judicial review of an agency decision. *See* Tex. Gov't Code Ann. § 2001.171 (West 2000); see also *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294-95 (Tex. 2001). This Court has held that the requirement of seeking a remedy with the administrative agency is jurisdictional rather than a matter going solely to a plaintiff's right to relief. *See Hill v. Board of Trs., Ret. Sys*., 40 S.W.3d 676, 678 (Tex. App.—Austin 2001, no pet.). Appellants contend that the exhaustion doctrine does not control this case because certain exceptions apply. They argue that they should not be required to exhaust their administrative remedies when their challenge of agency action is based on questions of law. *See Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986). They further contend that the doctrine of exhaustion of remedies does not apply to their constitutional claims because the Commission does not have exclusive jurisdiction to decide whether

11

S.B. 1593 is constitutional, in fact it has no jurisdiction to decide such a claim. *See Butnaru v. Ford*, 84 S.W.3d 198, 207-08 (Tex. 2002); *see also Texas State Bd. of Pharmacy v. Walgreen Tex. Co., 520 S.W.2d* (Tex. App.—Austin 1975, writ ref'd n.r.e).

TCEQ responds that, notwithstanding these exceptions, appellants' suits were filed after TCEQ's issuance of the amended permit, which constitutes a final order, and therefore these exceptions do not control. TCEQ urges this Court to apply our holding in *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Authority*—that in circumstances wherein the plaintiff neglected to bring any challenges to a state agency's action until after the final order was issued, the district court could not properly hear the plaintiff's claims because the claims were collateral attacks on the agency action. 96 S.W.3d 519 (Tex. App.—Austin 2002, pet. denied). We agree with TCEQ's argument.

In this case, where the dispute focuses on issuance of an amendment after a lengthy administrative process, these exceptions to the exhaustion doctrine could only have been invoked if appellants had sought judicial relief *before* the final agency order. For example, in *Yamaha v. Motor Vehicle Div.*, 860 S.W.2d 223 (Tex. App.—Austin 1993, writ denied), the plaintiff, for the first time in its judicial review action in court, challenged an order issued by the Texas Motor Vehicle Commission partly on the grounds that the Commission had exceeded its statutory authority. This Court rejected the challenge because Yamaha failed to assert such an argument before the final order was issued:

> We recognize that in certain limited circumstances, e.g., when an agency acts outside its constitutional or statutory authority, a party may challenge the agency's action independent of the procedural requirements imposed by APTRA in a statutory suit for judicial review. . . . This exception, however, allows a party to challenge the agency's action prior to the rendition of a final order.

*Id.* at 229 (citations omitted).

In this case, S.B. 1593 allowed the old Houston Lighting & Power permit to be reissued to TWDB in 1999, yet appellants did not complain about the bill until after TCEQ granted the amended permit in 2002 when it filed suit in district court. The present facts are substantially analogous to those in *Friends. See Friends,* 96 S.W.3d 519. In *Friends*, the plaintiffs asserted that the agency that applied for an amendment to its water permit had done so in violation of the open meetings act. *Id.* After the Commission had granted the amended permit, the plaintiffs filed suit alleging an open meetings violation. *Id.* We concluded that there had not been an open meetings act violation; however, we went on to question how the propriety of the other agency's actions could have affected a duly granted permit. *Id.* at 532. Even if the application had been sent to the Commission in violation of the open meetings act, the Commission passed it properly. *Id.* Therefore, we concluded that even if we had found the application in violation of the open meetings act, we could not have voided the permit. *Id.* Although, as appellants argue, their claims deal with the constitutionality of a bill and not the propriety of an agency action, the end result is the same. Even if the original Allens Creek permit was granted pursuant to an improper legislative enactment, the Commission properly granted the *amended* permit. Collateral attacks upon an agency order may be maintained successfully on one ground alone—that the order is void. *Lesikar v. Rappeport*, 33 S.W.3d 282, 316 (Tex. App.—Texarkana 2000, pet. denied) (citing *Gulf States Utils. Co. v. Coalition of Cities for Affordable Util. Rates*, 883 S.W.2d 739, 758 (Tex. App.—Austin 1994) (Powers, J., dissenting), *rev'd on other grounds*, 947 S.W.2d 887 (Tex.1997)). An agency order may be void in the requisite sense on either of two grounds: 1) the order shows on its face that the agency

13

exceeded its authority, or 2) a complainant shows that the order was procured by extrinsic fraud. *Id.*

As to the amended permit, neither of those conditions are met. Therefore, at this juncture, any analysis by this court on the constitutionality of S.B. 1593 would merely serve as an impermissible advisory opinion because, rather than remedying actual harm, it would address only a hypothetical injury. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). We conclude that appellants' attacks on S.B. 1593 are impermissible collateral attacks against a final agency order. We therefore overrule appellants' second and third issues.

**Post-contested-case administrative remedies**

Appellants assert[4] that they have in fact exhausted their post-contested-case administrative remedies, and thus this Court should review TCEQ's refusal to grant an extension for rehearing. Administrative remedies must be exhausted before a district court may hear the issue as a jurisdictional matter. *See Hill*, 40 S.W.3d at 678. Appellants failed to timely request a contested-case hearing. Appellants, however, argue that they have exhausted their administrative remedies through their filings for rehearing. The Texas Administrative Code states: "A motion for rehearing is a prerequisite to appeal." 30 Tex. Admin. Code Ann. § 80.271 (2003). As appellants have filed for rehearing and thus exhausted available administrative remedies with regard to post-contested-case filings, we will determine whether TCEQ appropriately denied appellants' extension filings, appropriately refused to place appellants' objections on the Commission docket, and ultimately properly refused to grant a hearing.

---

[4] Appellants also asserted in their fourth issue that if the notice of the amendment is defective, contested-case filing deadlines are tolled until a proper notice is issued. Because this Court has not concluded that appellants' notice was defective, we overrule appellants' fourth issue.

14

Appellants claim that TCEQ abused its discretion by refusing appellants' requests for a filing-extension, by refusing to place their objections on the Commission docket, and ultimately by refusing to grant appellants a hearing. TCEQ is afforded the option of granting extended time limits for the filing of motions. *See* 30 Tex. Admin. Code Ann. § 80.272 (2003). Appellants specifically complain that TCEQ has allowed extensions in the past, that TCEQ has unpublished guidelines by which it determines whether or not to grant extensions, and that TCEQ is acting arbitrarily by denying appellants' requests. Appellants rely on *United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 805 (Tex. App.—Austin 2000, dism'd as moot), to support their contention that TCEQ cannot rely on guidelines that it does not publish. However, *Grissom* involved TCEQ refusing a hearing because evidence was not submitted with the timely-filed hearing request. *Id.* Neither the notice in that case nor the agency's published rules required such evidence to be submitted concurrently with the request for hearing. *Id.*

The factual underpinnings of *Grissom* are quite different from the present case. *See id.* Appellants did not timely request a hearing. The notice and the agency rules are definitive on filing deadlines. TCEQ is not required to grant extensions at all. TCEQ stated in a letter to appellants that it was its policy not to grant filing extensions unless the extension filings were made by the filing deadline or as a result of a natural disaster, such as a hurricane. TCEQ was not required to provide an explanation of its denial. These are internal guidelines by which TCEQ exercises its statutory discretion and are reasonable. The other two complaints by appellants—that TCEQ erred by not including appellants' objections on the Commission docket and refusing to grant them a

15

hearing—are by-products of TCEQ's refusal to grant appellants an extension. We conclude that TCEQ did not abuse its discretion on the facts presented here. We overrule appellants' fifth issue.

**Executive Director's authority**

Appellants next claim that the Executive Director of TCEQ did not have authority to issue the amendment to the Allens Creek permit because the amendment was not "uncontested." The Texas Water Code provides for the delegation of uncontested matters to the Executive Director of the Commission. *See* Tex. Water Code Ann § 5.122 (West 2000). Agency rules provide that such action is appropriate provided that:

(1) public notice requirements have been satisfied and the executive director has considered the public comment and filed a response;

(2) the application meets all the relevant statutory and administrative criteria;

(3) the application does not raise new issues that require interpretation of commission policy;

(4) the executive director's staff and public interest counsel do not raise objections; and

(5) the application is uncontested because: (A) no timely requests for reconsideration or contested case hearing are filed with the clerk; (B) the applicant and persons who timely filed requests for reconsideration or contested case hearing have agreed in writing to the action to be taken by the executive director; (C) any timely requests for reconsideration or contested case hearing have been withdrawn or have been denied; (D) a settlement was reached in a contested case hearing, and the application has been remanded from SOAH; or (E) a contested case hearing has been filed but no opportunity for hearing is provided by law.

30 Tex. Admin. Code § 50.133 (2002).

16

Appellants argue that the Executive Director was not authorized to grant the Allens Creek amendment because none of the aforementioned provisions were met. We disagree because: (1) as we have discussed above, appellants received proper notice and appellants have not shown that the Executive Director did not consider or respond to public comment that was *timely* made; (2) the application does meet statutory guidelines—including the protection of senior water-right holders (issue discussed below); (3) even though this amendment was pursuant to a "first of its kind" reissued permit, the amendment process and the issues involved are not "new issues that required interpretation of commission policy;" (4) although the Public Interest Counsel of TCEQ did lodge an objection to the amendment notice—in response to appellants' motions for rehearing—it did not do so until after the Executive Director granted the amendment; and (5) the application was not under timely protest at the time the Executive Director granted the permit. Each of the provisions limiting when an Executive Director may act are time-sensitive. Although the amendment was contested by appellants, their protests were not timely and thus the Executive Director was not precluded from acting when he did. We overrule appellants' sixth issue.

**Appropriate review of the Allens Creek amended permit**

Appellants also argue (1) that provisions of S.B. 1593 outline specific protections—stream flow restrictions—for senior water-right holders which were not included in the amended Allens Creek permit and (2) that, based on a substantial-evidence review, TCEQ issued the Allens Creek permit amendment in violation of the water code due to the fact that the amendment impermissibly injures senior water-right holders. This Court may not properly review appellants' complaints because they were not first brought in a contested-case hearing. *See* Tex. Gov't Code

Ann. § 2001.171; *Hill*, 40 S.W.3d at 678. As we have concluded above, appellants were on notice that the Allens Creek amendment application requested terms that arguably could adversely affect appellants' interests. The application and supporting materials indicated that, instead of using strict stream flow restrictions, the amended permit would protect senior water-right holders by instituting "call" provisions wherein a senior right-holder may call the Allens Creek permitee to compel it to release water from the Allens Creek reservoir in order to bring the Brazos water level back up to a level that would allow senior water-right holders to divert water pursuant to their permits. Although these provisions may be onerous for appellants, it is not clear that they detract from their legal right to a specified amount of water. How a senior water-right holder's water right will be protected in practice is exactly the kind of issue that should be brought in a contested-case hearing. Appellants waived the issue by not requesting a contested-case at the appropriate time. We overrule appellants' seventh and eighth issues.

## CONCLUSION

Having overruled all appellants' issues, we affirm the judgment of the district court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed

Filed: December 18, 2003

18