# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00891-CV

**Texas Commission on Environmental Quality; Bryan W. Shaw, in his official capacity as Chairman of the Texas Commission on Environmental Quality; Buddy Garcia and Carlos Rubinstein, in their official capacity as Commissioners of the Texas Commission on Environmental Quality; Les Trobman in his official capacity as General Counsel for the Texas Commission on Environmental Quality; and TexCom Gulf Disposal, LLC, Appellants**

**v.**

**Denbury Onshore, LLC; Montgomery County; City of Conroe; Nicky E. Dyer; Flora Harrell; Edgar Hoagland; Shirley Hoagland; James A. Langston, III; James Langston; Lois Nelson; Brian Rodel; Richard Ward; Edward A. (Art) Wilson; and Bank of America, N.A., Trustee for Sabine Royalty Trust, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-11-001898, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellants Texas Commission on Environmental Quality; Bryan W. Shaw, in his official capacity as Chairman of the Texas Commission on Environmental Quality; Buddy Garcia and Carlos Rubinstein, in their official capacity as Commissioners of the Texas Commission on Environmental Quality; Les Trobman in his official capacity as General Counsel for the Texas Commission on Environmental Quality; and TexCom Gulf Disposal, LLC, appeal the trial court's order denying their pleas to the jurisdiction. Because we conclude that the trial court did not have jurisdiction to consider the claims brought by appellee Bank of America, N.A., Trustee for Sabine

Royalty Trust ("Sabine"), or the claims brought by the other appellees based upon alleged lack of proper notice to Sabine of the administrative proceeding, we reverse and dismiss those claims.

## BACKGROUND

*Administrative Proceeding*

Appellant TexCom Gulf Disposal, LLC, submitted an application for underground injection control well permits to the Commission in August 2005. *See* Tex. Water Code §§ 27.001–.105 (the "Act"); *see id*. § 27.011 (requiring permit from Commission for injection well to dispose of industrial and municipal waste); *see also* 30 Tex. Admin. Code § 39.651 (Tex. Comm'n on Environmental Quality, Application for Injection Well Permit).[1] TexCom sought to develop a commercial non-hazardous industrial wastewater disposal facility on an approximately 27-acre site in Montgomery County. The proposed facility is within the Conroe Field Unit. As part of its proposed facility, TexCom sought to put in operation an existing well and to construct and operate up to three additional wells to dispose of non-hazardous, industrial waste. In its application to the Commission, TexCom represented that it owned the minerals under its proposed facility. At all relevant times, appellee Sabine owned the minerals and the right to receive royalties associated with the minerals underlying the proposed facility and adjacent tracts.

The State Office of Administrative Hearings (SOAH) scheduled a preliminary hearing in July 2007 on the application. At the hearing, all of the appellees except Sabine were named parties to the proceeding. The contested-case hearing was held in December 2007, and a proposal

---

[1] Citations to the administrative code are to the Commission's rules unless otherwise stated.

for decision was issued in April 2008, but the Commission issued an interim order, remanding the matter to SOAH in December 2008 for an additional hearing. After appellee Denbury Onshore, LLC (Denbury) became the lessee-operator of the mineral interests underlying the site, Denbury filed a motion to intervene in the contested case and was designated a party in April 2010.

The remand hearing occurred in June 2010. During the hearing, Denbury filed a plea to the jurisdiction, arguing that SOAH lacked jurisdiction to hear testimony because proper notice was not mailed to Sabine, the owner of the minerals under the proposed facility. *See* Tex. Water Code § 27.018 (b), (c); 30 Tex. Admin. Code § 39.651. In response, TexCom presented an affidavit from the land manager of the executive rights holder for Sabine. In the affidavit, the land manager testified that the executive rights holder "was aware" of TexCom's application to construct and operate four underground injection control wells on the 27-acre site and that it had "no objection to TexCom's proposed facility or the injection of non-hazardous wastewater in compliance with the above-listed permits." The administrative law judges orally denied Denbury's plea, and the hearing continued.

The administrative law judges issued an amended proposal for decision after remand in November 2010. They recommended that the permit application be denied. The Commission, however, ultimately issued a final order on April 7, 2011, approving TexCom's application for the injection well permits to dispose of non-hazardous, industrial waste. *See* Tex. Water Code § 27.051 (addressing issuance of permits). A week before the final order was issued, Sabine sent a letter to the Commission stating that Sabine was the "record owner of the minerals and of the royalty since 1929," that it had no notice of TexCom's application, and that no party had the same interests as

3

Sabine. Sabine requested that the Commission grant the motions for rehearing opposing the proposed facility and provide Sabine with "the notice and opportunity to which it was entitled."

*Litigation Commenced*

Sabine filed suit in June 2011 seeking declaratory relief. *See* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011 ("UDJA"). Sabine alleged that the Commissioners had committed ultra vires acts by making a determination on TexCom's application "without proper notice, as required by statute" to Sabine. Sabine also sought judicial review of the Commission's order under the Administrative Procedure Act (APA) and the Water Code. *See* Tex. Gov't Code § 2001.174; Tex. Water Code § 5.351. The other appellees filed separate suits seeking declaratory relief and judicial review of the Commission's order. Among their asserted claims, they contended that TexCom's application was false and fundamentally deficient as to mineral rights and that the Commission was without jurisdiction to issue the order granting the permits because proper notice was not given to Sabine.

The district court consolidated appellees' suits. The Commission and TexCom filed pleas to the jurisdiction, seeking to dismiss Sabine's claims in their entirety and the other appellees' claims that were based upon lack of notice to Sabine. The Commission urged that the district court did not have jurisdiction over Sabine's claims because Sabine had notice of the administrative proceeding but failed to participate. The Commission argued that TexCom established that the executive rights holder was aware of the proceeding and did not object to the proposed facility. The Commission also urged that the other appellees lacked standing to complain about inadequate notice to someone else and, therefore, that the district court did not have jurisdiction over their complaints

4

about lack of notice to Sabine. In its plea to the jurisdiction, TexCom made similar arguments to the ones made by the Commission. It also contended that it properly executed notice of its application to the mineral interest owner.

Appellees filed responses to the pleas with evidence. Sabine urged that the Commission's actions in receiving evidence and issuing its order granting the permits were ultra vires and violated its due process rights because there was no evidence that Sabine received proper notice. Sabine urged that the applicable statute and rules required mailed notice to Sabine and that notice to Sabine's executive rights holder could not substitute for proper notice to Sabine. Sabine urged that evidence of proper notice was a jurisdictional prerequisite to the Commission's hearing testimony in the contested case. *See* Tex. Water Code § 27.018(c); 30 Tex. Admin. Code § 39.651. Sabine also argued that the pleas were improper because they forced an analysis of the merits of Sabine's claims and that the exhaustion of administrative remedies basis for the pleas failed. As to the affidavit from its executive rights holder, Sabine stated that the executive rights holder and Sabine "did not know of the contested case until June 2010."

In their responses, Montgomery County and City of Conroe made similar arguments to Sabine's. They also argued that they had standing to assert their claims based upon lack of notice to Sabine because TexCom's application was "fundamentally deficient" and the Commission "lacked jurisdiction to hear testimony and grant the Application." In its response, Denbury made similar arguments, and the individual appellees incorporated and adopted the arguments and responses of Montgomery County, City of Conroe, Denbury, and Sabine.

5

Appellees' evidence included affidavits executed in October 2011 from a senior vice president of the trustee for Sabine and the land manager of the executive rights holder. The land manager testified about her June 2010 affidavit and her belief at that time that "TexCom was working with the operator of the Conroe Field Unit in order to dispose of wastewater accompanying crude oil production from the waterflood Unit" and "seeking administrative approval in order to engage in this sort of wastewater disposal." She also testified to her "current understanding that TexCom's proposed wastewater disposal operations are not related to the operator's crude oil production." The senior vice president testified about Sabine's mineral ownership, its executive rights holders, and its relation with Denbury. The president described Sabine's "unique economic interests in hydrocarbon production from the [Conroe Field] Unit" and how its interests were not the same as Denbury's.

After an evidentiary hearing, the district court denied the pleas. In its order, the district court concluded that compliance with the notice requirements in section 27.018(c) was jurisdictional and that the "[f]ailure to comply with jurisdictional requirements render[ed] an order by the Commission void." The district court also concluded that Sabine did not fail to exhaust administrative remedies and that it had standing and noted that "fact issues that go to the merits of Plaintiffs' claims preclude granting [the pleas] without the presentation of evidence" and that the defendants "may reassert the pleas to the jurisdiction following the trial on the merits." These appeals followed.

6

## ANALYSIS

**Standard of Review**

Appellants challenge the denial of their pleas to the jurisdiction. We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus first on the plaintiff's petition to determine whether the facts that were pled affirmatively demonstrate that subject matter jurisdiction exists. *Id.* at 226. We construe the pleadings liberally in favor of the plaintiff. *Id*. If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id*. at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). The court's "ultimate inquiry is whether the plaintiff's pleaded and un-negated facts, taken as true and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's jurisdiction." *Brantley v. Texas Youth Comm'n,* 365 S.W.3d 89, 94 (Tex. App.—Austin 2011, no pet.) (citing *Miranda*, 133 S.W.3d at 226; *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 513, 516 n.8 (Tex. App.—Austin 2010, no pet.)).

Appellants' issues also concern statutory construction. We review matters of statutory construction de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). Of primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). "We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results." *Presidio Indep.*

7

*Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We consider the entire act, not isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008).

**Commission's Plea to the Jurisdiction**

Because they are dispositive, we limit our review to the Commission's issues. *See* Tex. R. App. P. 47.1.[2] The Commission raises three issues on appeal. The Commission urges that: (i) the district court erred by finding that section 27.018(c) was a jurisdictional statute governing the Commission's power to issue permits; (ii) the district court erred in denying the pleas to the jurisdiction because Sabine failed to exhaust administrative remedies; and (iii) the district court erred in denying the pleas as to the other appellees because they lacked standing to complain about lack of notice to Sabine.

*Section 27.018(c)*

In its first issue, the Commission urges that the district court erred by concluding that section 27.018(c) was jurisdictional. *See* Tex. Water Code § 27.018(c).[3] The district court concluded that the statutory language was mandatory and that compliance with its requirements was

---

[2] As a threshold matter, appellees challenge this Court's jurisdiction to consider the portion of the district court's order denying TexCom's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (allowing a "person" to bring an interlocutory appeal from an order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001"). Because the Commission's issues are dispositive, we need not reach this issue and limit our review to the issues raised by the Commission.

[3] Section 27.018 was amended in 2011 to add subsection (e), but the amendment is not relevant to this appeal. *See* Act of May 10, 2011, 82d Leg., R.S., ch. 106, § 2, 2011 Tex. Gen. Laws 106 (effective May 21, 2011).

jurisdictional. In its order denying the pleas, the district court recited Sabine's allegation that "the Commission was without jurisdiction to issue its order approving TexCom's application because notice was not given to all affected persons" and Sabine's request for declaratory relief that the Commissioners "committed ultra vires acts with respect to TexCom's application."[4] *See id.* § 27.018(b), (c); 30 Tex. Admin. Code § 39.651.

The Texas Supreme Court has outlined the relevant factors for courts to determine whether a statutory requirement is jurisdictional. *See City of DeSoto v. White*, 288 S.W.3d 389, 395–98 (Tex. 2009). Relevant factors are the text of the statute, the presence or absence of specific consequences for noncompliance, and the consequences that would result from each possible interpretation. *Id*. In *City of DeSoto*, the supreme court concluded that the pre-appeal notice provision at issue was not jurisdictional. *Id*. at 391. The court began "with the presumption that the Legislature did not intend to make the notice [provision] jurisdictional" and stated that this presumption may only be overcome "by clear legislative intent to the contrary." *Id*. at 395; *see also TJFA, L.P. v. Texas Comm'n on Envtl. Quality*, 368 S.W.3d 727, 731–32 (Tex. App.—Austin 2012, pet. denied) (discussing and applying *DeSoto* factors). We thus begin with the presumption that the legislature did not intend to make section 27.018(c) jurisdictional and are mindful that this presumption may only be overcome with clear legislative intent.

Turning to the text of section 27.018(c), the relevant language states that "[b]efore the commission begins to hear testimony in a contested case . . . evidence must be placed in the

---

[4] Sabine sued the individual commissioners in their official capacity. *See City of El Paso v. Heinrich,* 284 S.W.3d 366, 372–73 (Tex. 2009) (ultra vires claims properly brought against individual state officers in their official capacity).

record to demonstrate that proper notice regarding the hearing was given to affected persons" and that "the commission may not proceed with receipt of testimony in a contested case hearing until there is compliance with this subsection."[5] The use of the words "must" and "may not" supports that the requirements in subsection 27.018(c) are mandatory. *See City of DeSoto*, 288 S.W.3d at 395; *see also* Tex. Gov't Code § 311.016(3), (5) ("'Must' creates or recognizes a condition precedent. . . . 'May not' imposes a prohibition and is synonymous with 'shall not.'"). "But 'just because a statutory requirement is mandatory does not mean that compliance with it is jurisdictional.'" *City of DeSoto*, 288 S.W.3d at 395 (quoting *Alberton's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999)).

The plain language of section 27.018(c) does not address the Commission's power to issue permits but addresses evidentiary requirements for contested cases on permit applications. *See Scott*, 309 S.W.3d at 930. In contrast, the legislature expressly has authorized the Commission to issue injection well permits. *See* Tex. Water Code § 27.051(a) (authorizing the Commission to issue injection well permits and listing required findings); *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 528 (Tex. App.—Austin 2002, pet. denied) (noting that "whether the agencies correctly complied with all of the intricacies of the application process cannot be the factor that confers jurisdiction," that the Water Code expressly authorized the Commission to issue the permit at issue, "and in doing so it did not exercise authority beyond its statutorily conferred powers"); *see also City of DeSoto*, 288 S.W.3d at 397 (noting that "hallmark of a jurisdictional provision is that it 'seeks to assure the appropriate body adjudicates the dispute'"

---

[5] According to the Commission's final order, affidavits regarding mailed notices and notices of the hearing published in newspapers were admitted at the contested-case hearing.

10

(citation omitted)); *Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 267 (Tex. App.—Austin 2002, no pet.) (whether agency's interpretation is correct "cannot be the factor that confers jurisdiction"). Section 27.018(c) also expressly limits its reach to contested cases and addresses an evidentiary requirement, that "evidence must be placed in the record" that shows that proper notice regarding the hearing was given to "affected persons." Commission rules themselves define "affected person" and the various types of required notices in the context of injection well permits. *See* Tex. Gov't Code § 27.018(b) (directing commission to define "affected person" by rule); 30 Tex. Admin. Code §§ 331.2(3), 39.651.

We are also mindful of the consequence of a determination that this evidentiary provision is jurisdictional. If the provision is jurisdictional, it would encourage persons who did not receive proper notice under the Commission rules but were aware of a contested case not to participate unless a final order does not go their way. Appellees contend that the contrary consequence is that the Commission could grant an application without an affected person receiving notice and having the opportunity to participate. In that situation, however, the Commission rules allow persons who are adversely affected by material misrepresentations or omissions in an application to petition the Commission to suspend the permit. *See* 30 Tex. Admin Code § 305.66(a)(4) (permit or order may be revoked for good cause, including the "permittee's misrepresentation of relevant facts at any time"), (d) ("A person affected by the issuance of a permit or other order of the commission may initiate proceedings for revocation. . . .").

Viewing section 27.018(c) in context with the other sections of the Act, we cannot conclude that the legislature clearly intended its evidentiary requirements to be jurisdictional. *See*

11

*City of DeSoto,* 288 S.W.3d at 395; *Parker*, 249 S.W.3d at 396. We sustain the Commission's first issue.

### Exhaustion of Administrative Remedies

In its second issue, the Commission urges that the district court did not have jurisdiction to consider Sabine's claims because Sabine failed to exhaust its administrative remedies. The Commission contends that, even if Sabine was entitled to notice of the administrative proceeding, it had actual knowledge of the contested case in June 2010, could have intervened and participated in the hearing at that time, but failed to do so.

As a threshold matter to this issue, appellees urge that the Commission did not raise the ground of Sabine's actual notice of the administrative proceeding in its plea to the jurisdiction and, therefore, that this Court does not have jurisdiction to consider it as a ground to reverse the district court's denial of the plea. Even were we to agree with appellees' characterization of the Commission's plea, we may consider a governmental unit's claim of immunity from suit even if it is first raised on appeal. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95–96 (Tex. 2012). Further, the Commission stated in its plea that Sabine "had knowledge of the proceeding and failed to participate in the hearing," and, in its response to the plea, Sabine admitted that it was aware of the "contested case" in June 2010. Sabine's actual notice of the proceeding was before the trial court. We conclude that we have jurisdiction to consider this ground on appeal.

If an agency has exclusive jurisdiction to resolve a dispute, it is well established that a party must first exhaust administrative remedies before a trial court has subject matter jurisdiction to review the agency's action. Tex. Gov't Code § 2001.171; *see also In re Southwestern Bell Tel.*

12

*Co., L.P.*, 235 S.W.3d 619, 624–25 (Tex. 2007) (orig. proceeding) ("If an agency has exclusive jurisdiction to resolve a dispute, a party must first exhaust administrative remedies before a trial court has subject matter jurisdiction."); *Texas Water Comm'n v. Dellana*, 849 S.W.2d 808, 809–10 (Tex. 1993) (noting that section 5.351 of Water Code authorized judicial review of agency decisions but only after party "has exhausted all available administrative remedies"). "The requirement of administrative exhaustion compels a party to 'pursue all available remedies within the administrative process before seeking judicial relief.'" *Lazarides v. Farris*, 367 S.W.3d 788, 798 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (quoting *Larry Koch, Inc. v. Texas Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 839 (Tex. App.—Austin 2001, pet. denied)).

Appellees alleged that Sabine did not receive proper notice under the governing statutes and commission rules, but whether it received notice in accordance with the governing rules and statutes is not dispositive here. Sabine affirmatively asserted in its response to the plea to the jurisdiction that it "did not know of the contested case until June 2010." "'Assertions of fact, not plead in the alternative, in the live pleadings of a party are regarded as formal judicial admissions.'" *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (quoting *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983)). The record also includes Sabine's comment letter during the administrative proceeding to the Commissioners asking that they grant motions for rehearing opposing the permits, and Sabine states in its briefing to this Court: "Sabine did not know of the contested case until late June 2010." By judicial admission, as well as evidence, Sabine's actual notice of the contested case as of June 2010 was conclusively established.

13

Despite Sabine's admission and evidence, the other appellees urge that whether Sabine had actual notice and what Sabine actually knew were disputed.[6] They focus on the two affidavits from the land manager of Sabine's executive rights holder. According to their interpretation of the affidavits, the land manager was misled by TexCom as to the nature of the administrative proceeding when she executed the first affidavit and, at a minimum, a fact issue remains on whether Sabine had actual notice of the nature of the administrative proceeding. To support this argument, they rely on our opinion in *Anadarko E & P Co., L.P. v. Railroad Commission*, No. 03-04-00027-CV, 2009 WL 47112 (Tex. App.—Austin Jan. 7, 2009, no pet.) (mem. op.).

In that case, we affirmed an order by the Railroad Commission of Texas that determined that a previously issued permit was void *ab initio* because the complainant did not receive notice of the permit application in accordance with the Railroad Commission's rules concerning a well-spacing exception under Statewide Rule 37. *See id*. at *1 (citing 16 Tex. Admin. Code § 3.37 (2008) (Tex. R.R. Comm'n, Statewide Spacing Rule)). Because there was no objection to the application within 10 days, the Railroad Commission granted the application without holding a hearing or receiving evidence. *Id*. Several years after the permit was issued, the complainant filed a petition with the Railroad Commission challenging the original permit based upon lack of notice. The permittee responded by arguing that the party had actual notice of the proposed well location at the time that the original application was submitted. *Id*. at *8–9. In that context, we concluded

---

[6] For example, in a letter brief submitted after oral argument, appellees Montgomery County and City of Conroe contend that the issue of Sabine's "actual notice" was "hotly contested."

14

that actual notice of the proposed location for a well did not "equate to actual knowledge of [the] application for a Rule 37 exception." *Id*. In contrast to the facts in that case, there was a lengthy administrative proceeding, and Sabine did not seek relief from the Commission after it became aware of the contested case. We, therefore, find the facts of that case not analogous to the facts here.

In June 2010, administrative remedies were available but Sabine failed to avail itself of those remedies. Sabine could have intervened as Denbury did, sought to offer testimony as a non-party in the contested case to demonstrate how its interest was adversely affected, or filed a petition with the Commission urging that TexCom's application contained material misrepresentations. *See* 30 Tex. Admin. Code §§ 80.127(a)(2) (testimony of inadequately represented non-party may be admitted), 305.66(a)(4), (c)–(e), (f)(3) (procedures for revoking permit based upon misrepresentations or failure to disclose); *see also McMaster v. Public Util. Comm'n*, No. 03-11-00571-CV, 2012 Tex. App. LEXIS 7502, at *18–19 (Tex. App.—Austin Aug. 31, 2012, no pet.) (mem. op.) (rejecting interpretation of rule that "would allow a person who had actual knowledge of the [administrative] proceeding to wait until after resolution of the matter—i.e. after all the other parties expended considerable time and money on the issue—to step forward with a complaint"); *cf. Anadarko*, 2009 WL 47112, at *1 (affirming Railroad Commission's order that voided a prior order granting a permit based upon lack of notice of the application in accordance with its rules).

Appellees also urge that exceptions to the exhaustion doctrine apply. They urge that Sabine was not required to exhaust administrative remedies because the Commission acted outside its statutory authority. In addition to its claims for judicial review of the administrative order, Sabine

also asserted ultra vires claims pursuant to the UDJA.[7] We have already concluded, however, that section 27.018(c) was not jurisdictional and that Sabine had actual knowledge of the contested case. In this context, the Commission may have been wrong to receive testimony without proper notice to Sabine, but it was not without legal authority to issue the permits following the contested case hearing. *See Friends of Canyon Lake*, 96 S.W.3d at 528 (noting that plaintiff "was required to allege that the [Commission], by approving the Application and issuing the Amendment, acted wholly outside its jurisdiction"). Sabine's pleaded and un-negated facts, therefore, fail to demonstrate that it was excepted from exhausting its administrative remedies based upon its assertion that the Commission acted outside its statutory authority. *See Brantley*, 365 S.W.3d at 94.

---

[7] To establish a trial court's subject matter jurisdiction to grant relief under the UDJA, a party must plead the existence of an "underlying controversy" within the scope of section 37.004 of the Civil Practice and Remedies Code. *Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied); *see* Tex. Civ. Prac. & Rem. Code § 37.004(a). The UDJA, however, "does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature." *Heinrich,* 284 S.W.3d at 370–71. "Generally, a suit challenging a specific administrative order implicates sovereign immunity because it seeks to control state action—it seeks to restrain the State or its officials in the exercise of discretionary statutory or constitutional authority." *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 514 (Tex. App.—Austin 2010, no pet.) (citing *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 198 (Tex. 2004)).

Ultra vires suits, however, "to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity." *Heinrich*, 284 S.W.3d at 372; *see id.* at 373–77 (discussing remedy for ultra vires claims generally as being prospective injunctive relief, as compared with retroactive relief). "To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372; *see Creedmoor-Maha Water Supply Corp*, 307 S.W.3d at 517–18 (holding that "allegations that [the commission] reached an incorrect or wrong result when exercising its delegated authority" do not invoke "the district court's inherent jurisdiction to remedy ultra vires agency actions").

Appellees also urge that Sabine was not subject to the exhaustion of remedies requirement because Sabine's lawsuit presents questions of law and a constitutional issue, whether the Commission's action—its failure to provide statutorily-required notice to Sabine—violated Sabine's due process rights. Due process concerns arise "when the state or its agents deprive a person of a protected liberty or property interest." *See McMaster*, 2012 Tex. App. LEXIS 7502, at \*21. "Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *University of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). Assuming without deciding that the order deprived Sabine of a property interest, actual notice months before the Commission's order satisfies due process. *See McMaster*, 2012 Tex. App. LEXIS 7502, at \*23–25 (citing cases addressing required notice in due process context). Because Sabine judicially admitted that it had actual knowledge of the contested case months before the challenged Commission order, Sabine's pleadings conclusively demonstrate that it received due process. *See id.*; *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011) (governmental official retains immunity unless "viable" constitutional claim pleaded).

Appellees finally argue that the Commission's plea was improper because it forced an analysis of the merits of Sabine's claim. *See Miranda*, 133 S.W.3d at 227–28 (discussing defendant's burden as similar to movant of summary judgment when defendant's plea challenges merits); *see also University of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex. App.—Austin 2009, no pet.). Sabine contends that its core claim is that the Commission's order is void because of lack of proper notice to Sabine. Assuming without deciding that the Commission's plea goes to the merits of Sabine's claim, Sabine's judicial admission conclusively established that Sabine had actual

17

knowledge of the contested case at a time when it could have availed itself of administrative remedies, such as intervening in the administrative proceeding. *See Wolf*, 44 S.W.3d at 568. Therefore, the Commission's plea was proper even if it challenged the merits of Sabine's claim.

Because Sabine did not avail itself of administrative remedies available to it, Sabine failed to exhaust its administrative remedies. Thus the district court was without jurisdiction to consider its claims challenging the Commission's order. *See Friends of Canyon Lake*, 96 S.W.3d at 527 (holding that trial court "had no choice but to grant the pleas to the jurisdiction, as a trial court 'is generally without jurisdiction if the plaintiff fails to exhaust . . . administrative remedies'"); *see also Chocolate Bayou Water Co. & Sand Supply v. Texas Natural Res. Conservation Comm'n*, 124 S.W.3d 844, 851–53 (Tex. App.—Austin 2003, pet. denied) (courts lack jurisdiction over a suit for judicial review filed by a person who failed to participate in the contested-case proceeding following notice of the proceeding). We sustain the Commission's second issue.

*Other Appellees' Claims*

In its third issue, the Commission urges that the district court erred in denying its plea as to the claims by other appellees because they lacked standing to make complaints about lack of notice to Sabine. "[S]tanding focuses on the issue of *who* may bring an action." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) (citing *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 626–27 (Tex. 1996)) (emphasis in original). "In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012). A plaintiff's alleged injury is the starting point for the standing inquiry. *Id*. at 155. "The

18

plaintiff must be *personally* injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury." *Id*. (emphasis in original).

Appellee Denbury urges that appellants misstate Denbury's claims concerning Sabine. Denbury asserts that its claim concerning the lack of proper notice to Sabine is that TexCom's application was "false and fundamentally deficient" because it falsely represented that it was the mineral interest owner and did not identify Sabine and, therefore, that the Commission lacked jurisdiction to proceed with the contested case hearing or to issue its order. Denbury also argues that it established its standing to challenge the order granting the permits under its APA claim on the ground, among others, that TexCom failed to comply with the regulatory notice requirements. Appellees Montgomery County and the City of Conroe make similar arguments in their briefing.

Regardless of how appellees frame these claims, they fundamentally depend on a determination that Sabine did not have notice of the contested case. To establish standing then, they had to show "*personal* injury" by Sabine's alleged lack of notice. *See Heckman*, 369 S.W.3d at 155; *see also* Tex. Gov't Code § 2001.174(2) (requiring showing that "substantial rights of the appellant have been prejudiced"). We have already concluded that section 27.018(c) is not jurisdictional, Sabine judicially admitted that it had actual knowledge of the administrative proceeding in June 2010, and the other appellees participated in the administrative proceeding, providing evidence in opposition to the application to protect their own interests.

On this record, the other appellees have failed to plead facts to demonstrate standing to complain about lack of notice to Sabine. *See Heckman*, 369 S.W.3d at 154–55; *see also* Tex. Gov't Code § 2001.174(2); *McDaniel v. Texas Natural Res. Conservation Comm'n*, 982

S.W.2d 650, 654 (Tex. App.—Austin 1998, pet. denied) (holding that complainant "[did] not have standing to assert the interest of a third party who allegedly was never given notice of the applicant's affiliation"); *Smith v. Houston Chem. Servs., Inc.*, 872 S.W.2d 252, 273 (Tex. App.—Austin 1994, writ denied) (stating that "we do not comprehend how [opponent to commission's issuance of permit] could be prejudiced by a failure to notify another person"); *American Operating Co. v. Railroad Comm'n*, 744 S.W.2d 149, 155 (Tex. App.—Houston [14th Dist.] 1987, writ denied) (unit owner had no standing to challenge royalty interest lessor's lack of "*personal* notice" of hearing). We sustain the Commission's third issue.

## CONCLUSION

For these reasons, we reverse and dismiss the claims brought by appellee Sabine and the claims brought by the other appellees based upon an alleged lack of notice to Sabine of the administrative proceeding.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Reversed and Dismissed

Filed:   July 3, 2014

20