# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 12, 2025

Lyle W. Cayce
Clerk

No. 22-60556

Port Arthur Community Action Network,

*Petitioner*,

*versus*

Texas Commission on Environmental Quality; Jon
Niermann, *in his official capacity as Chairperson of the Texas Commission on Environmental Quality*,

*Respondents*.

_____

Appeal from the Texas Commission on Environmental Quality
Agency No. 2021-0942-AIR

_____

Before Wiener, Graves, and Douglas, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

Port Arthur Community Action Network ("PACAN") petitions for review of a decision by the Texas Commission on Environmental Quality ("TCEQ") to not impose certain emissions limitations on a new liquid natural gas ("LNG") facility that it previously imposed on another such facility. The petition centers on the novel, but determinative, question of whether, under Texas law, "best available control technology" encompasses air pollution control methods that TCEQ has issued a permit for but are not yet in operation. We accordingly certified that determinative question to the

No. 22-60556

Texas Supreme Court. 92 F.4th 1150, 1551 (5th Cir. 2024) (per curiam). Because the Texas Supreme Court has now clarified that, under Texas law, "best available control technology" cannot refer to methods that are not yet operational, we DENY PACAN's petition.

## I.

The federal Clean Air Act authorizes the Environmental Protection Agency ("EPA") to establish nationwide air pollution standards, including emissions standards for nitrogen oxides ("NOx") and carbon monoxide ("CO"). 42 U.S.C. §§ 7408-7409; 40 C.F.R. pt. 50. The EPA outsources enforcement of some of these standards to the states, which, in turn, adopt EPA-approved State Implementation Plans ("SIPs").

In Texas, the TCEQ is the agency responsible for enforcing the federal and state versions of the Clean Air Act. Texas' SIP requires TCEQ to issue a Prevention of Significant Deterioration permit (a "PSD permit") before a "major stationary source" of pollution is constructed in an EPA attainment area. 40 C.F.R. § 52.21(a)(2)(i). A "major stationary source" is a facility that has the potential to emit more than 250 tons of a regulated pollutant per year. *Id.*

To receive a PSD permit, an applicant must demonstrate that the emissions sources at its facility satisfy a metric known as Best Available Control Technology ("BACT"). 42 U.S.C. § 7475(a)(4); Tex. Health & Safety Code § 382.0518(b)(1). Generally, BACT requires new facilities to reduce pollution to the maximum degree possible, accounting for cost and other practical concerns. *See* 40 C.F.R. § 52.21(b)(12); 30 Tex. Admin. Code § 116.10(1). TCEQ and EPA have each adopted definitions of BACT, though TCEQ's definition incorporates EPA's definition by reference. *See* 30 Tex. Admin. Code § 116.160(c)(1)(A).

2

No. 22-60556

Intervenor Port Arthur LNG, L.L.C. plans to build a liquified natural gas plant and export terminal in Port Arthur, Texas. The proposed facility has the potential to annually emit more than 250 tons of a regulated pollutant and, thus, would be classified as a major stationary source. Port Arthur LNG accordingly applied for a PSD permit from TCEQ in 2019. The company identified multiple emissions sources, such as flares and oxidizers, and proposed emission rates for each. As relevant here, Port Arthur LNG proposed, for its refrigeration compression turbines, emission rates of 9 parts per million by volume, dry ("ppmvd") of NOx, and 25 ppmvd of CO.

After performing a technical review, TCEQ's Executive Director issued a preliminary decision and draft permit on June 2, 2020. The draft permit included Port Arthur LNG's proposed emission rates of 9 ppmvd of NOx and 25 ppmvd of CO for the refrigeration compression turbines. Following a public comment period, the Executive Director issued a final decision on March 24, 2021, concluding that Port Arthur LNG's draft permit complied with applicable law. This decision was referred to the Commission[1] for consideration at a subsequent public meeting.

Petitioner PACAN is a community organization in Port Arthur focused on environmental issues. It requested a contested case hearing in response to the Executive Director's final decision. *See* TEX. HEALTH & SAFETY CODE § 382.056(n). PACAN challenged multiple aspects of the draft permit, including whether the proposed controls on various emission sources would satisfy BACT. The request was granted, and the Commission referred the application to the State Office of Administrative Hearings. *See* TEX. GOV'T CODE § 2003.047(a).

---

[1] In this opinion, the "Commission" refers to the adjudicative body that decided Port Arthur LNG's application, while "TCEQ" refers to the respondents in this case.

An administrative law judge ("ALJ") held a preliminary hearing and determined that PACAN met the requirements for associational standing. *See* TEX. WATER CODE § 5.115(a). Two ALJs then held a hearing on the merits of PACAN's challenge in February 2022. In support of its application, Port Arthur LNG filed a certified copy of its application, the Executive Director's preliminary decision, and the draft permit. That was sufficient for the company to establish a prima facie case that the draft permit satisfied applicable legal requirements. TEX. GOV'T CODE § 2003.047(i-1).

In response, PACAN introduced, as an exhibit, a 2020 amendment to a permit for Rio Grande LNG, a liquid natural gas facility that has been approved but not yet constructed. Rio Grande LNG had proposed using the same refrigeration compression turbines as the Port Arthur facility. The amendment decreased the NOx and CO limits for Rio Grande LNG's refrigeration compression turbines from 9 ppmvd of NOx and 25 ppmvd of CO—Port Arthur LNG's proposed emission rates—to 5 ppmvd of NOx and 15 ppmvd of CO. The amendment stated that the new, decreased limits were "consistent with the lowest levels of control for Refrigeration Compressor Turbines; therefore, BACT is satisfied."

On May 20, 2022, the ALJs issued a Proposal for Decision and Proposed Order that recognized PACAN's concerns. In relevant part, the ALJs noted that Rio Grande LNG "utilizes the same [] turbines in refrigerant compressor service" as Port Arthur LNG's proposed project, but that the NOx and CO limits proposed by Port Arthur LNG were higher. They also noted that Port Arthur LNG "failed to identify Rio Grande LNG in its BACT analysis[] and failed to demonstrate why a CO emission limit of 15 ppmvd is not BACT for the Facility." Further, "neither [TCEQ's Executive Director] nor Applicant offered additional evidence to demonstrate that there is a 'compelling technical difference' as to why

No. 22-60556

Applicant's CO BACT proposal is less than what has been accepted as BACT in recent permit reviews." Accordingly, the ALJs proposed that the Commission approve the application subject to amendments that limited Port Arthur LNG's refrigeration compression turbine emissions to 5 ppmvd of NOx and 15 ppmvd of CO, the same as Rio Grande LNG.

TCEQ's Executive Director objected to the ALJs' proposed decision, writing that Rio Grande LNG's emissions limits had not been "demonstrated in practice," as Rio Grande LNG was "not in operation." Meanwhile, David Garcia, a permitting staff member in the EPA's regional office, explained that under the EPA's definition of BACT, technology "is not always required to be operational or actually demonstrated in practice to be considered technically feasible and BACT."[2] He also wrote that "[w]hile it is not mandatory to select a specific limit as BACT solely because another similar source has done so, the basis for selecting a less stringent limit should be documented in the permit record for evaluation."

Port Arthur LNG's application and the ALJs' proposal for decision then went to the Commission, which held a hearing on September 7, 2022. Eight days later, on September 15, the Commission granted Port Arthur LNG's PSD permit application and rejected the ALJs' proposed amendments. It explained, as relevant here, that while Rio Grande LNG had stricter refrigeration compression emissions limits, no "operational data" showed that those limits are actually achievable.

_____

[2] TCEQ argues that Garcia's letter cannot be considered by this court because it was never part of the administrative record. However, "[t]he record in a contested case shall include . . . all pleadings, motions, and intermediate rulings." 30 Tex. Admin. Code § 80.275. Because PACAN attached the letter as an exhibit to its motion for rehearing, it is part of the agency record.

No. 22-60556

PACAN moved for rehearing. The Commission did not act within 55 days, so the motion was overruled by operation of law. *See* 30 Tex. Admin. Code §§ 55.211(f), 80.272(e)(1). PACAN timely petitioned this court for review.

## II.

We have subject-matter jurisdiction to review PACAN's petition under the Natural Gas Act, 15 U.S.C. § 717r(d)(1). *Sierra Club v. La. Dep't of Env't Quality*, 100 F.4th 555, 563–64 (5th Cir. 2024) (holding that a state agency "act[s] pursuant to federal law" when issuing a permit pursuant to an EPA-approved SIP). That said, federal appellate courts reviewing state agency proceedings generally adhere to the applicable state law standard of review. *Twp. of Bordentown v. FERC*, 903 F.3d 234, 270 (3d Cir. 2018) ("Federal courts reviewing state agency action afford the agencies the deference they would receive under state law."); *see also Sierra Club*, 100 F.4th at 562 (adopting the approach of the "Third Circuit and others" in applying the appropriate standard of review under state law).

Under Texas law, the only issue for a reviewing court to decide is "whether the [Commission's] action is invalid, arbitrary, or unreasonable." Tex. Health & Safety Code § 382.032(e). Texas courts interpret this statute to incorporate the standard of review under the Texas Administrative Procedure Act ("Texas APA"). *United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 801 (Tex. App.—Austin 2000, pet. dism'd); *Smith v. Hous. Chem. Servs., Inc.*, 872 S.W.2d 252, 257 n.2 (Tex. App.—Austin 1994, writ denied). In accordance with the Texas APA, a court shall reverse or remand the case if the agency's findings, inferences, conclusions, or decisions are "not reasonably supported by substantial evidence" or "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tex. Gov't Code

§ 2001.174(2)(E)-(F). Whether that standard is met is a question of law that is reviewed *de novo*. *Grissom*, 17 S.W.3d at 801; *see also Phillips Petroleum Co. v. Tex. Comm'n on Env't Quality*, 121 S.W.3d 502, 505 (Tex. App.—Austin 2003, no pet.) (citation omitted) (explaining that "[w]hether the Commission failed to follow its own rules presents a question of law" and is therefore subject to *de novo* review).

## III.

### A.

As a preliminary matter, Port Arthur LNG argues that PACAN lacks Article III standing to challenge the Commission's permit approval. As an association, PACAN may invoke the standing of its members. *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019). To do so, it must demonstrate that its members have individual standing. *Id.* (citation omitted). That is, its members must have suffered (1) an injury in fact, (2) fairly traceable to the challenged conduct, and (3) likely to be redressed by a favorable judicial decision. *Gill v. Whitford*, 585 U.S. 48, 65 (2018). Here, PACAN invokes the standing of its president and founder, John Beard.

Port Arthur LNG argues that PACAN failed to allege that Beard suffered any injury traceable to CO emissions in particular. PACAN, in response, points to Beard's declaration submitted to the State Office of Administrative Hearings. There, Beard declared that his home is less than four miles from the proposed facility and that "[i]f Port Arthur LNG is allowed to emit *all of the air pollution it says it will emit* . . . [he] will . . . have to limit how much time [he] spend[s] outside at [his] house" (emphasis added). He added that he was concerned about health effects "as a result of *the additional pollution* Port Arthur LNG will add to the air at [his] property" (emphasis added). After detailing the ongoing recreational activities in which

he has long engaged at nearby Pleasure Island and Keith Lake Cut, he declared, "I am concerned that *air pollution* will harm recreational opportunities at Pleasure Island and near Pleasure Island, such as the Keith Lake Cut. I am worried because I am concerned that *air pollution* will harm air quality, water quality, and plant life in this area" (emphases added).

The Supreme Court has found similar testimony of association members—reflecting reasonable concerns about the negative effect of pollution on their personal interests—to be sufficient to establish standing. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 182–84 (2000). Notably, the Court did not require that testimony be so granular as to identify specific pollutants. *See, e.g., id.* at 182–83 (detailing concerns over water pollution caused by pollutant discharges). Accordingly, Beard's declaration is sufficient to support PACAN's standing.

**B.**

Turning to the merits of this appeal, PACAN argues that because Rio Grande LNG's approved, but not-yet-operational, emissions limits were BACT, the Commission erred by allowing higher NOx and CO limits for Port Arthur LNG. TCEQ responds that the Commission's determination that those levels were not demonstrated and therefore not achievable, and thus should not be required, is consistent with governing clean air regulations.

PACAN's petition effectively turns on whether Rio Grande LNG's emissions limits are considered BACT under Texas law. To resolve that novel question, we certified the following question to the Texas Supreme Court in February 2024:

> Does the phrase "has proven to be operational" in Texas'[] definition of "best available control technology" codified at Section 116.10(1) of the Texas Administrative Code require an

air pollution control method to be currently operating under a permit issued by the Texas Commission on Environmental Quality, or does it refer to methods that TCEQ deems to be capable of operating in the future?

92 F.4th at 1152. The Texas Supreme Court accepted our certified question, held oral argument in October 2024, and issued a clarifying opinion in February 2025. 707 S.W.3d 102, 104 (Tex. 2025).

In relevant part, the Court held that the phrase "has proven to be operational" within the definition of "best available control technology" turned not on whether TCEQ has previously issued a permit approving such methods, but rather, whether the technology itself was "technically practical," "economically reasonable," "operational," "obtainable," and "capable of reducing or eliminating emissions." *Id.* at 107. It stressed that because the Texas Administrative Code utilizes a perfect-tense verb form, "has proven," and requires proof through both "experience and research," the phrase "has proven to be operational" necessarily refers to methods that have "*already* proven, through experience and research, to be operational, obtainable, and capable of reducing emissions." *Id.* at 108 (emphasis original).

Crucially, the Court rejected the arguments that form the foundation of PACAN's petition. First, as to the use of Rio Grande LNG's approved, but not-yet-operational, emissions limits, the Court explained that the statute "requires that the pollution control method has already been demonstrated to be operational in the real world. Theoretical proof of a method's operability in the future is not enough." *Id.* at 107–08. Stated otherwise, Rio Grande LNG's emissions limits, which, at the time of PACAN's petition, were not supported by real-world operational data, cannot be used as a reference point for determining whether Port Arthur LNG's proposed limits were BACT.

Second, and more generally, the Court clarified that "the existence of a previous permit issued to [one facility] does not necessarily have any bearing on the standards [another facility] must meet to satisfy the BACT requirement." *Id.* at 109. It observed that because TCEQ is obliged to issue a permit for a facility that employs technology that is "*at least* BACT," an issued permit could reflect technology that controls pollution "beyond what is currently available, technically practical, and economically reasonable." *Id.* at 108 (emphasis original). Both of these principles foreclose PACAN's use of the Rio Grande LNG facility's approved-but-not-yet-operational BACT emissions levels as a comparator for Port Arthur LNG's draft permit. *Cf. id.* at 109 ("[W]hen a previously permitted facility has not yet been built—as appears to be the case here—its example will often be of limited usefulness in determining the degree of pollution control that 'has proven,' 'through experience and research,' to be 'operational,' 'obtainable,' etc." (quoting 30 TEX. ADMIN. CODE § 116.10(1)) (citing TEX. HEALTH & SAFETY CODE § 382.0518(b)(1))).

PACAN makes two arguments in response to the Texas Supreme Court's opinion. First, it maintains that "the record reveals ample evidence that emissions limits of 5ppm NOx and 15ppm CO are achievable," and points to (1) vendor guarantees and (2) TCEQ's approval of Rio Grande LNG's lowered emissions limits. But neither piece of information constitutes operational evidence that available technology, which is employed to achieve those lowered emissions limits, "has already proven, through experience and research, to be operational, obtainable, and capable of reducing emissions." 707 S.W.3d at 108.

Second, PACAN suggests that TCEQ's definition of BACT, which is derived from its regulations for minor-source facilities, undermines the federal definition of the same term. But the definitions are not mutually exclusive in application: the federal definition concerns "major" facilities, 40

C.F.R. § 52.21(b)(12), while the Texas definition applies to any "new or modified facility," major or minor, 30 TEX. ADMIN. CODE § 116.10(1); *see also* Approval and Promulgation of Implementation Plans; Texas; Revisions to the General Definitions for Texas New Source Review and the Minor New Source Review Qualified Facilities Program, 81 Fed. Reg. 26,180, 26,181 (May 2, 2016) (the EPA acknowledging that "the definition at 30 TAC Section 116.10(1) . . . will be applied to all Texas [new source review] permitting actions, major and minor"). And, the EPA has recognized that TCEQ may apply both "Texas BACT and federal BACT to all PSD permits." 79 Fed. Reg. 66,626, 66,632 (Nov. 10, 2014).

Of course, "[f]ederal BACT requirements will govern the permitting process if there is a difference in stringency between the federal BACT requirements and the Texas BACT requirements." *Id.* But requiring a facility to meet both federal and Texas BACT requirements does not thwart or undercut the federal requirement, and PACAN does not identify any "difference in stringency" that would create a preemptive effect. *Id.* At bottom, then, the (EPA-approved) concurrent nature of the Texas and federal BACT requirements does not, on its own, undermine the federal Clean Air Act.

## IV.

For the reasons stated above, we DENY PACAN's petition for review of the Commission's decision.

11